John **PUMA**, Plaintiff,

v.

J. Willard **MARRIOTT** et al., Defendants.

Civ. A. No. 3275.

United States District Court,
D. Delaware.

Sept. 15, 1972.

Ernest S. Wilson, Jr., of Wilson & Russell, Wilmington, Del., and Stanley L. Kaufman, Alan K. Peckel and Donald M. Kresge, of Kaufman, Taylor, Kimmel & Miller, New York City, for plaintiff.

R. Franklin Balotti, of Richards, Layton & Finger, Wilmington, Del., and Frank H. Strickler, Whiteford, Hart, Carmody & Wilson, Washington, D. C., for defendants, Marriott Corporation and Don G. Mitchell.

David F. Anderson, of Potter, Anderson & Corroon, Wilmington, Del., and Burton A. Schwalb, of Arent, Fox, Kintner, Plotkin & Kahn, Washington, D. C., for various individual defendants.

## OPINION

CALEB M. WRIGHT, Chief Judge.

This is a derivative stockholders' suit brought on behalf of Marriott-Hot Shoppes, Inc. (Marriott) and arising out of Marriott's purchase at an allegedly unfair price of the stock of six corporations principally owned by insiders of Marriott. The plaintiff, John Puma, is the owner and holder of record of several hundred shares of Marriott common stock and was a Marriott stockholder at the time of the transactions involved herein. The individual defendants include all of the directors of Marriott at the time of the purchase and all of the insiders and members of their families who were the sellers of the stock acquired.

The complaint is fashioned into two counts. The first count is predicated upon the defendants' alleged contravention of Sections 14(a) and 10(b) of the Securities Exchange Act of 1934, 15 U.S. C. §§ 78n(a) and 78j(b), and Rules 14a–9 and 10b–5 promulgated thereunder, and the second count is based upon the defendants' alleged breach of their common law fiduciary duties as directors and insiders of Marriott.

The case is presently before the Court on the plaintiff's motion for a partial summary judgment on the issue of liability under Section 14(a). It is direct-

20

ed against the four defendants who were both owners of the properties purchased and directors of Marriott when the acquisition was approved; namely, J. Willard Marriott, Sr., J. Willard Marriott, Jr., Alice S. Marriott and Milton A. Barlow.

The plaintiff contends that the present record unequivocally evidences that the proxy statement which preceded the acquisition in issue and sought stockholder approval for it was materially false and misleading.

The defendants argue that this suit is barred by res judicata and collateral estoppel by reason of the decision of Vice Chancellor Short in a companion case litigated in the Delaware Court of Chancery. The case in Chancery Court was primarily premised on the plaintiff's claims that the purchase was unfair to Marriott and that the defendants were liable for breach of their common law fiduciary duties. In addition, the plaintiff raised the allegation that the proxy was false and misleading. The case was tried in June 1970. The Court rendered its opinion in favor of the defendants and dismissed the complaint on the grounds that an independent board of directors had approved the transaction and that no actual fraud had been proved. If the suit is not barred by Vice Chancellor Short's decision, the defendants maintain that the proxy statement fully and accurately detailed the acquisition and that there were no omissions of material facts. Finally, they deny numerous factual allegations made by the plaintiff and contend that summary judgment cannot be granted because of such factual disputes.

To prevail on a motion for summary judgment, the plaintiff must bear the burden of producing undisputed evidence to entitle him to judgment. Cram v. Sun Insurance Office, Ltd., 375 F.2d 670,

674 (4th Cir. 1967); 6 Moore, Federal Practice ¶ 56.15[3] (2nd ed.). Moreover, the party opposing the motion is entitled to have the record viewed in a light most favorable to its position. Id.

## THE FACTS

Marriott is a Delaware corporation having its principal place of business in Bethesda, Maryland. Historically, its principal business was the operation of restaurant facilities on leased premises. In the 1950's, Marriott entered the Motor Hotel business. Various members of the Marriott family played a dominant role in conducting the corporation, and in many instances, were owners of the premises leased to Marriott.

In 1953, Marriott sold its shares to the public for the first time. However, the affiliated landlord interests were not terminated prior to Marriott's going public and, therefore, possible conflicts of interest were created. In 1963–1964, discussions were initiated concerning the possibility of Marriott purchasing from the various insiders several of the property companies which owned certain land and buildings leased by Marriott for utilization in its business. After considerable investigation and negotiation,[1] on September 10, 1965, the five outside members of the board of directors authorized Marriott to acquire six property companies which owned the land and buildings for seven of the Marriott facilities—six restaurants and a motor hotel—and one leasehold interest in a restaurant facility.[2] The six companies and a description of their facilities were as follows: Parkview Properties, Inc. (Parkview), a restaurant in the Philadelphia area; Sellers Real Estate Co. (Sellers), a restaurant in Washington, D. C.; Potomac Properties, Inc. (Potomac), a restaurant in Arlington, Va., and a leasehold interest in a restaurant in

---

1. The precise nature of the preparation and the finalization of the acquisition package is the subject of substantial dispute. In this action, the Court has attempted to glean the facts not in dispute to provide an overview of the transaction upon which this litigation is predicated.

2. One of the six property companies was the owner of a seventh property company which leased a facility to the Marriott. Therefore, although the actual purchase of stock involved only the six companies, the purchase necessarily included the acquisition of the seventh facility.

Richmond, Va.; Brentwood Properties, Inc. (Brentwood), a restaurant in Washington, D. C.; Kirkwood Properties, Inc. (Kirkwood), a restaurant in Fairfax, Va.; and Woodmar Realty, Inc. (Woodmar), a restaurant in Washington, D. C., and a wholly-owned subsidiary, Monument Properties, Inc. (Monument), a motel in Philadelphia. Three of the companies, Parkview, Sellers and Potomac, were to be obtained in tax-free stock-for-stock exchanges between Marriott and the properties' owners. The remaining three companies were to be merged into Marriott with the owners receiving Marriott stock in a tax-free statutory merger.

The acquisition was approved by the five Marriott directors who were neither members of the Marriott family nor owners of the property companies. It was presented to the shareholders for their approval in a proxy statement issued October 14, 1965. It received shareholder approval at Marriott's annual meeting on November 9, 1965 and was consummated at the January 4, 1966 final closing.

## THE APPLICABLE LEGAL STANDARDS

██ The defendants' reliance on res judicata or collateral estoppel as a bar to this action is unfounded. Vice Chancellor Short expressly declined to reach the question of stockholder ratification of the transaction and the related issue of whether the proxy materials were false and misleading. More importantly, in Section 27 of the Securities and Exchange Act of 1934, federal courts are given exclusive jurisdiction over violations of the Act, and the plaintiff is, therefore, entitled to have his Section 14(a) complaint determined by this Court under the standards governing the 1934 Act. See Kahan v. Rosenstiel, 285 F.Supp. 61 (D.Del. 1968). The effect of Vice Chancellor Short's findings on specific factual issues raised in or related to this case under the doctrine of collateral estoppel has not been briefed or argued and must be determined prior to an ultimate resolution herein.

██ Section 14(a) and Rule 14a–9 issued pursuant thereto make it unlawful for an individual to solicit or permit the use of one's name to solicit a proxy by means of a proxy statement or other communication which "is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading. . . ." Rule 14a–9. Therefore, to establish a violation, the plaintiff must prove: 1. that the Marriott proxy materials were false or misleading or omitted facts necessary to prevent statements made from being false or misleading, and 2. that the misstatements or omissions were material. A material defect has been defined by the Supreme Court as a misstatement or omission "that it might have been considered important by a reasonable shareholder who was in the process of deciding how to vote." Mills v. Electric Auto-Lite Co., 396 U.S. 375, 384, 90 S.Ct. 616, 621, 24 L.Ed.2d 593 (1970). Materiality cannot be established through defects which are of slight magnitude or only tangentially related to the transaction for which the proxy is solicited. Id.

## THE ALLEGED MATERIAL MISSTATEMENTS AND OMISSIONS

The plaintiff has listed a number of alleged misstatements and omissions in support of the instant motion. They may be divided into several general categories which constitute the plaintiff's primary objections to the proxy materials. The Court will discuss the alleged material defects within the context of the broader categories since it is within this context that the significance of the plaintiff's objections is more readily appreciated. In addition, the Court has not attempted to deal with each individual alleged defect, but has focused on those which on the present record appear to be most substantial.

██ The plaintiff contends that the transaction was unfair to Marriott in that the consideration received by the sellers exceeded the value of the property

companies acquired. Moreover, he maintains that by reason of their domination of Marriott, the Marriott family, and J. Willard Marriott, Sr., controlled the management and board of directors of the company and dictated the conditions of the transaction. The plaintiff alleges that the acquisition was initiated by Marriott, Sr. who was motivated to sell because of unfavorable investment and tax consequences facing his family through continued ownership of certain of the properties, primarily the Monument (the Philadelphia Motor Hotel). He further alleges that the additional property companies were included to conceal Mr. Marriott's design as well as a substantial short term profit realized by the owners of the hotel. These allegations underlie most of the specific defects cited by the plaintiff and serve as the foundation upon which he predicates his primary arguments concerning materiality. At present, they are adamantly contested by the defendants, and cannot be accepted for purposes of this motion since they constitute disputed factual issues. Conceding this, the plaintiff, nonetheless, argues that summary judgment is appropriate. The Court is of the opinion that the issues herein, particularly materiality, are too dependent upon the resolution of the above discussed factual dispute to be appropriately resolved on a motion for summary judgment.

The plaintiff avers that the proxy statement is materially defective in the following major areas: 1. its characterization of the motives of the sellers and the benefits accruing to them; 2. its depiction of the pricing mechanism and factors relevant to the directors' approval of the transaction; and 3. the nature of the transaction and the importance of the purchase of the Philadelphia Hotel.

The plaintiff cites several alleged facts relating to the benefits received by the sellers which were omitted from the proxy statement. First, the proxy statement fails to state that the sellers would suffer adverse economic consequences from continued ownership of the property companies because the sellers had utilized most of the depreciation through accelerated write-off. Second, the statement did not disclose that pursuant to Rule 133 of the Securities and Exchange Commission the sellers could immediately sell some of their stock without suffering adverse tax consequences. Moreover, the statement did not disclose that at the sellers' behest, the transaction was deliberately structured to comply with Section 133 requirements. The plaintiff argues that this omission is particularly important since the sellers' ability to immediately sell the stock negates the necessity for a blockage discount. Third, the proxy materials did not reveal that the sellers demanded either a tax-free transaction or a substantial increase in the purchase price to offset capital gains tax liability. Fourth, the statement did not disclose that the price received by the sellers was not adjusted downward for the tax-free nature of the exchange.

The defendants argue that certain of the above allegations are erroneous and that none are significant enough to be considered material. Citing Vice Chancellor Short's factual determination that the Marriott family did not want to sell their shares and did so at the request of management, the defendants maintain that the sellers' motives, and therefore, the depreciation and tax status of the properties is irrelevant. In addition, the defendants contend that different prices for a tax-free and a taxable transaction is not unusual. They state that in cash transactions, sellers generally require a purchaser to increase the price to absorb tax liability. Finally, the sellers deny that the transaction was purposely designed to comply with Section 133 requirements and that all of the sellers expected to retain ownership of the shares and did not plan to sell them under a Section 133 exemption.

■■ In an insider transaction such as this, the proxy statement should attempt to illuminate the benefits accruing not only to the purchaser corporation, but also to the insider sellers. However, not every factor remotely connected to the sale need be included. To do so

would force the solicitors to risk being liable for including so much detail that they could be accused of attempting to mislead or confuse the shareholders by the length and complexity of the materials. If the sellers dominated the transaction, dictated the terms, and demanded a particular form of acquisition, then undoubtedly the factors raised by the plaintiff are significant. However, the importance of the alleged omissions to a shareholder's consideration, at least to some degree, depends upon the seller's motivations. For purposes of this motion, it must be assumed that the Marriotts were unwilling to sell and did so at the management's request. Under such circumstances, the tax depreciation status of the sellers is, perhaps, of less consequence. Thus, the Court is unable to accept the plaintiff's contention that omission of that fact was so clearly material as to support a motion for summary judgment.

The pertinence of the Rule 133 omission also depends upon the resolution of the dispute regarding the Marriott family's domination of the transaction, and the applicability of the Rule's exemption. Since the defendants maintain the sale was not structured to meet Rule 133, the materiality of this omission is unclear. This is especially true in light of the defendants' further contention that only a small portion of the total shares actually satisfy Rule 133 requirements and were saleable thereunder. Thus, on the record, a summary judgment based on this defect is precluded.

The defendants argue that the omission of any reference to their insistance on an increase in price for a taxable transaction was not material since it is a common practice for sellers to make such a demand when a sale will result in substantial capital gains tax liability. Once again the materiality of this fact will be more clearly evidenced after the factual disputes referred to previously are resolved.

Finally, the defendants maintain that the non-taxable aspect of the transaction was considered as one of the elements in establishing the price, thereby creating a factual dispute regarding the plaintiff's fourth alleged material omission. The issue must be resolved at trial.

In support of his allegation that the proxy statement inaccurately portrays the manner by which the transaction was formulated and the price determined, the plaintiff enumerates several alleged defects: 1. the appraisal procedure was neither fully nor accurately described; 2. the reasons for a reduction in the total number of shares actually received by the sellers and the number initially approved by the directors was erroneously stated; 3. a conflict of interest on the part of the outside financial consultants Merrill-Lynch was not disclosed; 4. outside counsel's expertise was misstated; 5. the blockage discount was not properly set forth; and 6. certain items allegedly considered by the directors in establishing the price to offer for the properties had not, in fact, been considered. The defendants contest several of the plaintiff's factual allegations and contend that any misstatements or omissions are insignificant and, therefore, immaterial.

The precise nature of the appraiser's methodology, the reason for certain appraisal and price adjustments, the permissibility of utilization of construction costs for Parkview and increased rental rates on lease renewals are, among other issues, pertinent to a resolution of the liability issue and are presently in dispute. Certain statements are either inaccurate, or at best ambiguous (e. g. the statement regarding two appraisals); but the materiality of the statements is not a matter for summary judgment. The procedures through which price was determined and subsequently revised would most probably be of primary importance to the shareholders. However, until the record is complete and disputed facts resolved, the Court cannot summarily determine the presence or absence of material defects in the challenged proxy materials.

The third principal area in which the plaintiff maintains that the proxy materials are deficient concerns their de-

piction of the nature of the transaction and the concealment of the predominance of the Philadelphia Hotel in the acquisition. Although the proxy statement contains most of the facts requisite to demonstrate the Hotel's dominant role in the purchase, the plaintiff argues that they are not stated in conspicuous enough fashion. See Kohn v. American Metal Climax, Inc., 313 F.Supp. 1251 (E. D.Pa.1970) aff'd in part 458 F.2d 255 (3rd Cir. 1972). As noted previously, he maintains that the Marriott family's motive in designing the transaction to relieve themselves of an economically unattractive investment and the corresponding efforts to conceal the hotel's importance were not disclosed. In addition, he also charges that the fact that Marriott's credit was utilized to finance the construction of the hotel was not disclosed and that this was particularly misleading in light of the proxy materials reference to the company's policy of minimizing investment in real property and buildings. Finally, he contends that the substantial short range profit on the Monument Hotel should have been specifically described and that the proxy materials assertion concerning the seller's acquisition of these properties between 1932 and 1950 is materially misleading without such a disclosure. Once again, the defendants raise several disputed issues of fact and argue that the proxy materials adequately reveal the status of the Monument property.

As in the preceding two categories of alleged material defects, the Court is of the opinion that the issues pertinent to Section 14(a) liability in the third category can only be determined after resolution of the factual issues at trial. In all three areas, the Marriott family's motives and domination of the transaction and board of directors may be such that the proxy statement is materially false and misleading for failure to disclose not only the numerous specific items presently cited by the plaintiff, but also the existence of the Marriott family's domination of the acquisition. However, absent proof of such control, the materiality of the remaining alleged misstatements and omissions must be determined within a different factual perspective.

The Court does not intend to suggest that proof of such ulterior motives is a prerequisite to establishing liability. Obviously, the three areas emphasized by the plaintiff, the sellers' benefits, the pricing mechanism and the nature of the purchase, would be of prime importance to any shareholder's assessment of the proposed acquisition, especially in light of the Marriott family's presence in the corporate affairs. However, the Court cannot presently accept the plaintiff's contentions that the record is sufficient to establish the proxy statement's material deficiency. As made explicit in the several cases cited by the plaintiff in which summary judgment was entered on the issue of liability under Section 14(a), each case must be determined on its particularized factual situation. The undisputed facts on the present record do not adequately support the plaintiff's motion, and it is therefore denied.

Submit order.