**ATLAS CORPORATION, Plaintiff,**

v.

**BLASIUS INDUSTRIES, INC., Blasius Limited Partnership, L & D Precision Limited Partnership, M.W.L. Enterprises, Limited, Warren Delano, Jr., Michael A. Lubin, William P. Shulevitz, Harold H. George, William B. Conner, Kenneth I. Greenstein, Andrew R. Heyer, Arnold W. MacAlonan and Thomas J. Murnick, Defendants.**

**Civ. A. No. 88–59 LON.**

United States District Court, D. Delaware.

March 4, 1988.

Charles F. Richards, Jr., Samuel A. Nolen and C. Stephen Bigler of Richards, Layton & Finger, Wilmington, Del. (Kenneth R. Logan, Joseph F. Tringali and Brad N. Friedman of Simpson Thacher & Bartlett, New York City, of counsel), for plaintiff.

A. Gilchrest Sparks, III and Michael Houghton of Morris, Nichols, Arsht & Tunnell, Wilmington, Del. (Greg A. Danilow and Linds C. Goldstein of Kramer, Levin, Nessen, Kamin & Frankel, New York City, of counsel), for defendants.

## OPINION

LONGOBARDI, District Judge.

This is a lawsuit arising under the federal security laws in which the Plaintiff, Atlas Corporation ("Atlas"), seeks injunctive relief. After the action was filed, Atlas moved for a preliminary injunction enjoining the Consent Solicitation of Atlas' shareholders instituted by the Defendants',[1] Blasius Industries, Inc., Blasius Limited Partnership, L & D Precision Limited Partnership, M.W.L. Enterprises, Limited, Warren Delano, Jr., Michael A. Lubin, William P. Schulevitz, Harold H. George, William B. Conner, Kenneth I. Greenstein, Andrew R. Heyer, Arnold W. MacAlonan and Thomas J. Murnick. The briefing on an accelerated basis has been completed and oral argument was heard on Tuesday, March 1, 1988. This is the Court's decision on Plaintiff's motion.

## BACKGROUND

A brief discussion of the factual background would be helpful in understanding the claims and defenses raised by the parties.

Defendants commenced purchasing shares of Atlas sometime in July, 1987. On October 29, 1987, they filed a Schedule 13D with the Securities and Exchange Commission ("SEC") stating that they owned in the aggregate 9.1 percent of Atlas' common stock and that Defendants would seek to encourage Atlas' management to enhance stockholders values through a restructuring of the company or by other means. Thereafter, a meeting between representatives of the Defendants and Mr. Weaver, Atlas' president and chief executive officer, took place on December 2, 1987, at which time no substantive matters were concluded. Mr. Weaver did, however, seek additional information from the Defendants, so on December 7, 1987, the Defendants provided Atlas with a four page letter and three pages of exhibits setting forth some details. Weaver suggested another meeting sometime after January 1, 1988. On December 30, 1987, Defendants caused Cede & Co. to deliver to Atlas a written consent calling for (1) Atlas' board to adopt a precatory resolution recommending the board develop and propose a restructuring program or sell the

---

1. There are numerous Defendants in the action, the individual identities of which are, for our purposes, immaterial. Unless otherwise deemed necessary, actions by one or some Defendants will be hereafter referred to collectively.

company; (2) amendment of Atlas' by-laws expanding the board from seven to fifteen members; and (3) the election of eight of Defendants' nominees to fill the vacancies. Thereafter, Defendants commenced an action in Delaware's Court of Chancery.

On December 31, 1987, the Atlas board amended its by-laws to increase the number of directors from seven to nine and appointed John M. Devaney and Harry J. Winters to the newly created offices. Defendants then caused a new consent to be delivered to Atlas together with solicitation materials. On February 1, 1988, Defendants mailed to Atlas shareholders a Consent Statement for the adoption of four proposals. It is these proposals which Atlas contends provides the basis for its requested relief.

After Atlas filed this lawsuit on February 5, 1988, Defendants sent a Supplemental Letter to Atlas' shareholders advising them of the federal court action and responding on a point by point basis to Atlas' contentions about Defendants' deficient original consent solicitations. Atlas also has written the shareholders.

## CONTENTIONS OF THE PARTIES

The Plaintiff contends that the "original consent material and a supplemental letter", Plaintiff's Brief, Docket Item ("D.I.") 10, at 3,[2] contain material omissions and misrepresentations of fact in that:

(a) Defendants did not disclose that Atlas may be unable to declare legally a dividend of the magnitude contemplated by the Blasius restructuring proposal so that the Blasius proposal may not be implemented even if Defendants were able to gain control of the Atlas Board of Directors;

(b) Defendants did not disclose that the debentures to be distributed to Atlas' shareholders as a result of the Blasius restructuring proposal would trade at a substantial discount from their face value;

(c) Defendants did not disclose that the Blasius restructuring proposal would cause Atlas to become insolvent and unable to

service its debt and could result in its bankruptcy;

(d) Defendants did not disclose that they may not, as a matter of Delaware General Corporation Law, solicit consents to remove without cause Messrs. Devaney and Winters from the Atlas Board of Directors and that therefore Defendants will not be able to gain control of the Atlas Board of Directors;

(e) Defendants have not provided the shareholders sufficient time in which to revoke consents which were given previous to the Supplemental Letter since Defendants may utilize the consents whenever a majority have been granted and not revoked.

Blasius, on the other hand, contends that there is no material omission in the original Consent Solicitation in and of itself. Blasius asserts, furthermore, that the Supplemental Letter should be considered in conjunction with the Consent Solicitation and, when this is done, Blasius has addressed all of the concerns raised by Atlas. DB, D.I. 14, at 22. Blasius also argues that it has fully and adequately described the proposed Restructuring Program. *Id.* at 24. Blasius counters Atlas' argument as to removal of Messrs. Devaney and Winters by agreeing that this issue is a litigable question and that it has candidly disclosed all of the necessary issues. *Id.* at 43.

## THE LAW

(a) *Preliminary Injunction*

Preliminary injunctions are not granted as a matter of right. *Norfolk Southern Corp. v. Oberly*, 594 F.Supp. 514, 519 (D.Del.1984), citing *Eli Lilly and Co. v. Premo Pharmaceutical Labs.*, 630 F.2d 120, 136 (3d Cir.), *cert. denied*, 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980). It is an extraordinary remedy and must be sparingly granted. *Wyrough & Loser, Inc. v. Pelmor Laboratories, Inc.*, 376 F.2d 543, 547 (3d Cir.1967). In order to obtain a preliminary injunction, the moving party must show "(1) a reasonable probability of

---

**2.** Plaintiff's opening brief will be referred hereafter as PB; Plaintiff's Reply Brief will be referred hereafter as PRB; Defendants' brief will be referred hereafter as DB.

eventual success in the litigation, and (2) that irreparable injury will ensue if relief is not granted. In addition, the court may consider (3) the possibility of harm to other interested persons from the grant or denial of relief, and (4) the public interest." *Kennecott Corp. v. Smith*, 637 F.2d 181, 187 (3d Cir.1980), citing *Constructors Ass'n of Western Pennsylvania v. Kreps*, 573 F.2d 811, 815 (3d Cir.1978); *Delaware River Port Auth. v. Transamerican Trail. Tr., Inc.*, 501 F.2d 917, 919–20 (3d Cir.1974). Merely establishing a risk of irreparable harm is not enough. *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir.1987). Rather, the moving party has the burden of proving a "clear showing of immediate irreparable injury." *Id.*, quoting *Continental Group, Inc. v. Amoco Chem. Corp.*, 614 F.2d 351, 359 (3d Cir.1980); *see also Sherman v. Posner*, 266 F.Supp. 871, 873 (S.D.N.Y.1966) (moving party has a "heavy burden of proof" of establishing the necessary elements for a preliminary injunction by "clear and convincing proof").

(b) *Section 14(a) and Rule 14a–9(a)*

Section 14(a) reads in pertinent part as follows:

> It shall be unlawful for any person … in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section [12] of this title.

15 U.S.C. § 78n(a). Rule 14a–9(a), in turn, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or mislead-

ing or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

17 C.F.R. § 240.14a–9(a).

As the Supreme Court has observed, "[t]he purpose of § 14(a) is to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation." *J.I. Case Co. v. Borak*, 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964). Section 14(a) "was intended to promote 'the free exercise of the voting rights of stockholders' by ensuring that proxies would be solicited with 'explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought.'" *Mills v. Electric Auto-Lite*, 396 U.S. 375, 381, 90 S.Ct. 616, 620, 24 L.Ed.2d 593 (1970), quoting H.R. Rep. No. 1383, 73rd Cong., 2d Sess., 13 (1934); S.Rep. No. 792, 73rd Cong., 2d Sess., 12 (1934).

In order to succeed on the substantive merits prong, Atlas must demonstrate the probability (1) that the consent solicitation materials were false or misleading or that Blasius omitted facts necessary to prevent statements from being false or misleading; and (2) that the misstatements or omissions were material. *See TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 444, 96 S.Ct. 2126, 2130, 48 L.Ed.2d 757 (1976); *Mills v. Electric Auto-Lite*, 396 U.S. at 385, 90 S.Ct. at 622; *Pabst Brewing Co. v. Jacobs*, 549 F.Supp. 1068, 1073 (D.Del.) *aff'd*, 707 F.2d 1394 (3d Cir.1982); *Puma v. Marriott*, 348 F.Supp. 18, 21 (D.Del.1972). "An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.… Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC*, 426 U.S. at 449, 96 S.Ct. at 2132. *See also Gould v. American-Hawaiian S.S. Co.*, 535 F.2d 761, 771 (3d Cir.1976); *Doffle-*

*myer v. W.F. Hall Printing Co.*, 558 F.Supp. 372, 382 (D.Del.1983); *Keyser v. Commonwealth National Financial Corp.*, 644 F.Supp. 1130, 1140 (M.D.Pa. 1986). The question of materiality "is an objective one" and is to be determined from the perspective of the reasonable shareholder. *TSC Industries*, 426 U.S. at 445, 96 S.Ct. at 2130. Furthermore, the "assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, ... are peculiarly ones for the trier of fact." *Id.* at 450, 96 S.Ct. at 2132.

### DISCUSSION OF FACTS

In order to establish a violation of section 14(a), a party must demonstrate that the alleged misstatement or omission was "material." If the misstatement would have no effect on a shareholder's decision in determining how to vote, then there is no violation.

While the standard for materiality is clearly established, its application to a particular set of facts necessarily will vary from case to case. In the case before the Court, Plaintiff alleges that Defendants made omissions or misstatements of material facts concerning both Defendants' Restructuring Proposal as well as the issue of the removal of Messrs. Devaney and Winters.

#### (a) *Blasius' Restructuring Proposal*

■ Plaintiff's argument that Blasius failed to adequately disclose or falsely misrepresented the details of its Restructuring Proposal focuses upon three claims. Plaintiff's first claim is that Defendants failed to disclose the fact that the Restructuring Proposal could not be implemented because Atlas would be unable to legally declare dividends of the requisite magnitude. PB, D.I. 10, at 26.

Plaintiff argues that, under Delaware law, a corporation may only pay dividends from "surplus ... or ... in case there shall be no such surplus, out of [the corporation's] net profits for the fiscal year in which the dividend is declared and/or the preceding fiscal year." 8 Del.C. § 170(a). Therefore, to determine the amount of available surplus, the board may undertake a revaluation of the corporation's assets and liabilities to reflect "current fair values." *Id.* at 28. Atlas undertook a revaluation to determine the feasibility of Blasius' proposal and, as disclosed in its brief and accompanying affidavit, Atlas concluded that declaration and payment of the dividends proposed by Blasius would exceed the funds legally available. *Id.* at 29.

In its Consent Solicitation material dated February 1, 1988, Blasius states that the purpose of the Restructuring Proposal is to maximize the value of Atlas' common stock which Blasius believes is currently undervalued. Consent Statement at 4, Exhibit 1 to Affidavit of Warren Delano, Jr., D.I. 16. In its Consent Statement, Blasius acknowledges that the "exact composition of the package of cash and marketable debt securities to be distributed to stockholders" cannot be determined "at this time." *Id.* at 11. The Consent materials make it clear that the Restructuring Proposal is based only upon publicly available information and that "Blasius' conclusion that the common stock is undervalued is based solely upon such publicly available information." *Id.* Indeed, Blasius concedes that were it to have access to the company's books, records, property or personnel, its conclusion and analysis might well be affected by such additional information. *Id.* Moreover, in its Supplemental Material, Blasius specifically addresses Atlas' allegation that "Blasius has failed to disclose the fact that Atlas may be unable to declare legally a dividend of the magnitude contemplated by the Restructuring Proposal." Supplemental Consent Material at 2, Exhibit 7 to Affidavit of Warren Delano, Jr., D.I. 16. Blasius responded as follows: "Blasius agrees with Atlas management that the aggregate value of the Special Dividends will substantially exceed the accumulated surplus presently shown on Atlas' balance sheet. In order to pay the Special Dividends, a revaluation of the assets and liabilities of Atlas (including its on-going pre-

cious metals operations) would have to be undertaken." *Id.*

The question of whether or not Blasius' Restructuring Proposal will yield a surplus of sufficient magnitude to enable Atlas to legally declare dividends in the amount proposed by Blasius is at this time unclear. But that is not the issue. The question is whether Blasius' proposal is a "misstatement" of a material fact when the language used to describe it is couched in such contingencies. Atlas may disagree with Blasius' calculations but the merits of Blasius' proposal is a question for the shareholders to resolve. Certainly, at this point, the Court could not decide the revaluation project as feasible or not feasible. Nor should it. The purpose of section 14(a) is to provide full and adequate disclosure to the shareholders, not to assure that the substantive merits of a proposal couched in terms of contingencies must first be demonstrated. Atlas' position that the proposal is preposterous or untenable is beside the point. The issue is whether it violates the law. By contrast, even if a transaction which resulted from inadequately disclosed information to the shareholders was found to be fundamentally fair, a court would not uphold such a transaction. As the Supreme Court stated in *Mills,* to do so would "allow the stockholders to be bypassed" and would result in "[a] judicial appraisal of the merger's merits [to] be substituted for the actual and informed vote of the stockholders." *Mills,* 396 U.S. at 381, 90 S.Ct. at 620. In *Allen v. Penn Central Company,* the court reiterated the admonition of the Supreme Court.

> Nowhere in the language of § 14(a) or Rule 14a–9 can we find the slightest hint of a mandate for the courts to pass on the wisdom of a position for which proxies have been solicited. The only issue in an action arising under § 14(a) is the sufficiency of the proxy material itself.... The court may not substitute its judgment for that of the shareholders.

350 F.Supp. 697, 702 (E.D.Pa.1972).

On the basis of the record before the Court, this Court finds that Atlas has failed to carry its burden of demonstrating a probability of success on the question of whether Blasius adequately disclosed the details of its Recapitalization Proposal. Blasius adequately disclosed the contingent nature of its conclusion that Atlas' common stock is currently undervalued. Furthermore, the Court notes that if and when the Blasius proposal is voted upon and it becomes clear that the corporation will not be able to legally declare the dividends contemplated by Blasius, Blasius' second alternative will be implemented, namely, the sale of the company.

> Upon a detailed review of the Company's books and records, the Blasius candidates may conclude that the Restructuring Program will not maximize the value of the Common Stock. In that event, it is the intention of the Blasius candidates to undertake a sale of the Company or substantially all of its assets on terms designed to maximize stockholder values.

Consent Statement at 2, Exhibit 1 to Affidavit of Warren Delano, Jr., D.I. 16.

Plaintiff next contends that Blasius has "misrepresented the true value of the Blasius Restructuring Proposal." PB, D.I. 10, at 29. Plaintiff argues that Blasius' "best estimate" of the debenture dividend is misleading because it misrepresents the "true value" of the debentures. *Id.* at 31. Atlas claims that the assumption that the debentures could trade at an amount "equal to, or in excess of, their principal amount" is not possible. Rather, Atlas claims, based upon the conclusions of its financial analyst, Robert P. Fisher, Jr., that "the debentures would have a market value substantially below their principal amount." *Id.* In point of fact, however, the Consent Statement does not suggest that the debentures *will* have a market value "equal to, or in excess of" their principal amount. Rather, on pages 2, 10 and 12 of the Consent Statement, Blasius clearly states that *"there can be no assurance* that the Debentures will have a market value equal to, or in excess of, their principal amount." Consent Statement at 2, Exhibit 1 to Affidavit of Warren Delano, Jr., D.I. 16 (emphasis supplied). Moreover, the Consent Statement states that the ability of Blasius

to issue the proposed "Total Dividends" is based upon a number of assumptions and subject to certain contingencies.[3]

Atlas attacks the use of the language used by Blasius. Specifically, Atlas contends that the use of the words "equal to" does not mean the same as "less than." Taken from context, the semantical dissection of the sentence might help substantiate Atlas' position. But that exercise is not the way the Consent material should be evaluated. It is the total mix of information that is critical, not isolated words and phrases. Fairly read, the complete sentence conveys the message that the debentures could trade at less than their face amount. What other conclusion would one reach when Blasius says there can be no assurances that the debentures will trade at "equal" and "or in excess" of their principal amount. Clearly, if they will not trade at an amount "equal to", it must be construed to mean "less" because the opposite is specifically stated. What is of critical importance, though, is that Blasius did even more in its Consent Statement. It said "... nor can there by any assurance that an active trading market will develop for the Debentures." Consent Statement at 12, Exhibit 1 to Affidavit of Warren Delano, Jr., D.I. 16. Also, in its Supplemental Consent Materials, Blasius clearly states, "Blasius agrees that it is also possible that the Debentures will trade at a substantial discount." Supplement to Consent at 3, Exhibit 7 to Affidavit of Warren Delano, Jr., D.I. 16.

Based on the foregoing, the Court concludes that Plaintiff has failed to carry its burden of demonstrating a probability that it could ultimately, on a more expanded record, prove a substantial likelihood that a reasonable shareholder would consider the

omitted words "less than" important in how to vote. The Court finds that it is not a misstatement of a material fact for one party to set forth its estimates of the value of debentures when it clearly disclosed the assumptions upon which such an estimate is based. Atlas may disagree with Blasius' calculations but the proper audience for such a dispute is the shareholder, not this Court.

Plaintiff's final contention is that Blasius' assertion that its Restructuring Proposal would permit Atlas to have "sufficient financial flexibility to maintain exploration efforts and expand current mining operations" is false and misleading. PB, D.I. 10, at 32. The thrust of this argument is that even were Atlas able to obtain a gold loan on commercially reasonable terms of the size contemplated by Blasius, Atlas would not be able to meet its debt service obligations on the subordinated debentures to be distributed to the stockholders. *Id.* at 33. Atlas, it contends, would have "a cumulative cash flow deficit" which would make it impossible for Atlas to conduct its operations. *Id.* at 34. Atlas bases its conclusions upon the alternative assumptions that the price of gold remains at $475/ounce or increases to a constant gold price of $575/ounce. Because the Blasius Restructuring Proposal will result in a cash flow deficit that could force Atlas into bankruptcy, Atlas contends that Blasius' statements that Atlas will be able to continue to maintain and expand its mining operations after restructuring are false and misleading. *Id.* at 34–35.

Notwithstanding Plaintiff's arguments to the contrary, this Court finds, based upon a close reading of the Consent Statement, that Blasius makes no false representations concerning the ability of Atlas to con-

---

**3.** The assumptions upon which Blasius depended for its best estimate of projected dividends per share of common stock are as follows:

(i) the Company's Building Products Division and Services Division are sold for aggregate cash consideration of $15,172,000, (ii) there are no proceeds received from the Company's discontinued Uranium Division (other than through sales of inventory under the existing agreement with Public Service Electric & Gas Co.), (iii) all stock options are exercised prior

to the Dividend Record Date, and (iv) 0%, 50% or 100% of the Company's Option Warrants are exercised prior to the Dividend Record Date.

*Id.* at 9. The Consent Statement also states that "the ability of the Blasius candidates to consummate a restructuring similar to the Restructuring Proposal is subject to certain contingencies", one of which is that the debentures will have a market value equal to or in excess of their principal amount. *Id.* at 12.

tinue its operations. The Consent Statement nowhere represents definitively that, upon restructuring, Atlas will be able to maintain and expand its operations. Rather, the Consent sets forth Blasius' *belief* that Atlas will maintain sufficient flexibility to continue and expand its operations if certain assumptions prove to be true.

Blasius believes that, although the restructured Atlas will be substantially more leveraged than the existing Company, Atlas will have sufficient financial flexibility to maintain exploration efforts and to expand its current mining operations. In its analysis, Blasius has assumed, among other things, that (i) Atlas' gold production is increased to 75,000 ounces per year commencing one year after the completion of the Restructuring Proposal, (ii) Atlas' costs of gold production are approximately $130 per ounce, (iii) gold continues to trade in the market at prices in excess of $450 per ounce, and (iv) Atlas' gold exploration program will continue at a cost of $3,000,000 per annum and will generate additional gold reserves sufficient to maintain production at a rate of 75,000 ounces per year until the maturity of the Debentures. Based upon such assumptions, Blasius believes that the Company will have sufficient cash resources to service its obligations on the Debentures and the Gold Loan.

Consent Statement at 11, Exhibit 1 to Affidavit of Warren Delano, Jr., D.I. 16. Blasius' representation is clearly stated to be based upon a well-defined set of assumptions. This Court concludes that insofar as Blasius has set forth its belief that Atlas will be able to continue its operations and has disclosed the assumptions which formed the basis for its belief, such statements are neither false nor misleading. (Interestingly, Atlas' argument is substantially undermined by a recent press release showing new gold funds and increased production.) Again, this becomes a question for the shareholders, not one for this Court to decide. Therefore, Plaintiff has failed to demonstrate a probability of success on the question of whether or not Blasius violated section 14(a) by making materially misleading, false or omitted statements.

(b) *Removal of Newly Appointed Directors*

██ Atlas contends that Blasius continues to make false and misleading statements in both the Consent Statement and the Supplemental Letter because the Defendants fail to disclose that Messrs. Devaney and Winters cannot be removed without cause, PB, 11 D.I. 10, at 17, thus, Defendants cannot gain control of the board of directors. *Id.* Plaintiff argues that Blasius has violated section 14(a) because the Consent Statement contains a false and misleading statement about Delaware law when it states that the two newly appointed directors may be removed without cause. PB, D.I. 10, at 17; PRB, D.I. 20, at 12. Furthermore, the suggestion that there may be a basis for removing the two directors found in the Certificate of Incorporation is itself false and misleading because Blasius fails to disclose the provision in the Certificate of Incorporation upon which it relies and because the provision to which it assumes Blasius refers prohibits such a reading. PB, D.I. 10, at 21–24. Blasius argues, on the other hand, that the Consent Statement adequately informs the Atlas shareholders as to the issue of removing Messrs. Devaney and Winters. DB, D.I. 14, at 42. Blasius contends that its Consent Statement is not required to predict the outcome of the litigation it explained to the shareholders. *Id.* at 43–47. Furthermore, Blasius has made a good faith disclosure of the material it had available, including the possibility of the result in the pending Chancery action. *Id.* at 46, 55. Finally, Blasius contends that the question of whether the shareholders have a right to remove the two newly appointed directors pursuant to the Certificate of Incorporation is a litigable question. *Id.* at 47.

The Court finds that, on the present record, the Plaintiff has not carried its burden of showing a probability of success or that Blasius has inadequately or improperly explained the pending proceedings before the Court of Chancery. It is more

likely there are no material omissions in the original Consent Statement. In its Consent Statement, Blasius explains that it is challenging sections 11(b), 11(c) and 12 of Atlas' by-laws as violating section 228 of the General Corporation Law of Delaware on the basis that these provisions improperly manipulate the effective date and the notice date of any Consent Statement. Consent Statement at 7, Exhibit 1 to Affidavit of Warren Delano, Jr., D.I. 16. Furthermore, Blasius explains that it amended its complaint in order to challenge the election of Messrs. Devaney and Winters. Blasius informs the shareholders that its complaint alleges that the appointment of the two directors was an improper use of the corporate machinery in that it "was taken for the sole or primary purpose of thwarting the will of the Company's stockholders as expressed through the consent procedure initiated by Blasius...." *Id.* Blasius also explains that, in the event the above argument is unsuccessful, it intends to argue that "Section 141(k) applies only to directors elected by stockholders so it would not apply to directors elected by the incumbent board and that certain language in the Company's Certificate of Incorporation suggests that only directors appointed by the stockholders are protected from removal without cause." *Id.* at 8. Thus, if successful, Messrs. Devaney and Winters could be removed by a successful consent solicitation.

In order to give the shareholders all sides of the dispute, Blasius also states that Atlas is challenging the effectiveness of the consents under Delaware law. It is explained that Atlas is seeking a declaratory judgment that "any consents expressed, solicited, or received for the removal of Messrs. Devaney and Winters are void." *Id.* Atlas' position is that section 141(k) prohibits the removal without cause of any director on a classified board unless the Certificate of Incorporation provides otherwise. *Id.* It informs the shareholders that to its knowledge the issue has never been litigated in Delaware. Consent Statement at 8, Exhibit 1 to Affidavit of Warran Delano, Jr., D.I. 16. Finally, Blasius informs the shareholders that, even though it intends to litigate the Chancery action vigorously, it cannot predict the outcome of the litigation. *Id.* at 7–8. The Court finds that Blasius has given the Atlas shareholders enough information upon which to make an informed decision on whether to consent to the proposal at issue.

Plaintiff takes issue with the fact that there is no good faith basis for the dispute involving the applicability of section 141(k). Consequently, Defendants may not rely upon *Ash v. LFE Corporation,* 525 F.2d 215 (3d Cir.1975); *Revlon, Inc. v. Pantry Pride, Inc.,* 621 F.Supp. 804 (D.Del.1985); *Warner Communications, Inc. v. Murdoch,* 581 F.Supp. 1482 (D.Del.1984); and *Shapiro v. Belmont Industries, Inc.,* 438 F.Supp. 284 (E.D.Pa.1977), to assert that it has not violated section 14(a) because it has disclosed the issue and the possible results to the shareholders. Both parties addressed the merits of this issue, disregarding the fact that we are not at a stage to substantively decide the litigable issue. For instance, Atlas contends that Blasius' failure to inform the shareholders of the specific provisions upon which it relies is a material omission. The shareholders are informed that one of Blasius' arguments is predicated on the language in the Certificate of Incorporation. Thus, a shareholder knows to turn to the Certificate of Incorporation if he wants further information to assist him in his assessment of Blasius' proposal. It does not seem that a more detailed citation is going to significantly alter the available information. The lack of significance is further underscored when one considers that a shareholder knows that this reference only goes to one of three bases for Blasius' claim in Chancery. A shareholder, therefore, is weighing the success of Blasius' proposal based upon the presence of three possible grounds for its position. Thus, the lack of the reference to the specific provisions in the Certificate of Incorporation is not a material omission just as the absence of a reference to the seminal case underlying the theory of Blasius' first allegation or a reference to the legislative history of section 141(k) to support the Defendants' second theory are not

material omissions. Blasius has informed the shareholders of the necessary elements of both parties' claims. For these reasons, the Court believes for the purposes of the present motion that the Plaintiff's argument is unpersuasive.

#### (c) *The February 8 Supplemental Letter*

■ Although the Court finds that the original Consent Solicitation does not contain material misstatements or omissions, *see* discussion *supra,* were the Court to find it materially defective, the analysis would not end there. The Court could consider the Consent Solicitation and the February 8, 1988, Supplemental Letter together to determine whether Blasius violated section 14(a) and Rule 14a–9. Blasius contends that the Supplemental Letter should be considered with the Consent Solicitation so that the two together equal a unified Consent Solicitation. DB, D.I. 14, at 20. By drawing attention to Atlas' concerns and addressing them directly, Blasius contends that it has gone beyond curing any alleged infirmities that Atlas may have discerned in the Consent Solicitation. *Id.* at 22. Furthermore, the Supplemental Letter puts forth additional data which the Complaint alleges was necessary to make the Consent Solicitation not misleading and this information has been disseminated in a timely manner. *Id.* at 23–24. Atlas, on the other hand, argues that Blasius cannot cure a deficient consent with a Supplemental Letter that puts the burden on the stockholder to revoke a consent previously given based upon deficient material. PB, D.I. 10, at 15. Atlas argues, furthermore, that a supplemental letter cannot be a cure for original solicitation material that contains deliberate misrepresentations and omissions. PRB, D.I. 20, at 8. Finally, even if Blasius' Supplemental Letter could cure the original Consent Solicitation, the Atlas shareholders have not been provided with ample time to absorb and review the Supplemental Letter. *Id.* at 7.

The Supplemental Letter may be considered in conjunction with the Consent Solicitation. *Newgard v. Electro–Nucleonics, Inc.,* [1976] Fed.Sec.L.Rep. (CCH) ¶ 95,805 (S.D.N.Y.1976), does not stand for the proposition that a supplemental letter can never cure a consent solicitation. Rather, the court held that the supplemental letter could not remedy the previous deficiencies because it was issued ten days before the annual meeting. *Id.* Thus, the court's concern was on the time needed for the supplemental information to be disseminated. The Plaintiff points out, however, that the cases cited by the Defendants involve situations where the original solicitation material did not contain a material misstatement or omission. *See Howell v. Management Assistance, Inc.,* 519 F.Supp. 83 (S.D.N.Y.1981), *aff'd,* 685 F.2d 424 (2d Cir.1982); *Abramson v. Nytronics, Inc.,* 312 F.Supp. 519 (S.D.N.Y.1970). Merely because the facts in these two cases differ from the facts before this Court, the principle of law which allows for a supplemental letter to timely cure any alleged material defects is not undermined. *See, e.g., Lessler v. Dominion Textile, Ltd.,* 411 F.Supp. 40, 42 (S.D.N.Y.1975). (Because the defendant lessened the likelihood of irreparable harm to the plaintiff by sending a letter to all shareholders containing the supplementary information, the failure to disclose this information earlier should not be the basis for a preliminary injunction.) In point of fact, the *Howell* court recognizes that courts "have conditioned approval of proxy statements on the filing of supplements [citations omitted] and have approved over claims of non-disclosure proxy statements which were supplemented after the commencement of litigation." [citations omitted]. *Howell,* 519 F.Supp. at 87–88.

The question of whether this Court should consider the Supplemental Letter in conjunction with the Consent Solicitation then turns on the question of timely dissemination of the supplemental information. The Plaintiff argues that the Atlas shareholders do not, in fact, have until March 7, 1988, to revoke their consents in light of the Supplemental Letter because revocations are valid up until the earlier of March 7, 1988, or "the time that signed unrevoked Consents by the holders of 50% of the common stock outstanding on the

Consent Record Date have been delivered to the Company." *See* Supplemental Letter at 4, Exhibit 7 to affidavit of Warren Delano, Jr., D.I. 16. Because the Consent Solicitation period may close at any time, Atlas contends that the shareholders do not have the requisite time to consider the Supplemental Letter. Although this argument may seem compelling in the abstract, the facts indicate that the shareholders have had ample time. As of March 1, 1988, Blasius has not delivered the required number of consents to the company. Consequently, because the Supplemental Letter was mailed on February 8, 1988, the Atlas shareholders have had twenty-one days to consider the Supplemental Letter and to act thereon. As a result, this Court finds that there has been ample time for the information to be disseminated. *See, e.g., Howell,* 519 F.Supp. at 88 (thirteen days is sufficient); *Abramson,* 312 F.Supp. at 523 (fourteen days is adequate).

Finally, Atlas argues that the method chosen by Blasius is inadequate. Atlas contends that the burden should not be placed upon the shareholder to revoke their consents. Consent Solicitation is normally a battle of paper in which one side encourages a shareholder to give his or her consent; the other side, in turn, seeks to encourage that he or she revoke the consent given; and, if that happens, the first party effectively hopes for a revocation of the revocation by encouraging the shareholder to ultimately consent to the proposal. In light of the nature of consent solicitations, it does not seem unusual or improper for Blasius to allow a shareholder to revoke the given consent if he or she so desires after reading the Supplemental Letter. This Court, furthermore, finds the *Abramson* court's common sense view applicable to this situation: "It seems unlikely, however, that anyone who had voted upon the basis of the original [41] page [Consent Solicitation] would have failed to give attention to the subsequent [4] page letter, particularly when it clearly indicated on its first page that it dealt with a lawsuit relating to the earlier statement." *Abramson,* 312 F.Supp. at 526.

Because the Plaintiff has not carried its burden of proving probability of success on the merits, it is not necessary to discuss the other elements of the standard for granting preliminary injunctive relief. *Gershman v. Universal Resources Holding, Inc.,* 641 F.Supp. 1359, 1375 (D.N.J. 1986) (motion for preliminary injunction denied where party failed to show a reasonable probability of success on the merits); *Local No. 1 (ACA), Etc. v. I.B.T., C., W. & H.,* 419 F.Supp. 263, 287 (E.D.Pa.1976) (in the complete absence of any one factor, the injunction may not issue).

Based upon the foregoing, Plaintiff has failed to carry its burden of showing a probability of success on the merits. Therefore, Plaintiff's motion for a preliminary injunction is denied.