**Charles Ben HOWELL, Suing on Behalf of Himself and All Other Persons Similarly Situated As A Class, Plaintiff,**

v.

**MANAGEMENT ASSISTANCE, INC., Genesis One Computer Corporation, Robert W. Berend, Raymond P. Kurshan and Charles F. Trayes, Defendants.**

No. 78 Civ. 3516.

United States District Court,
S. D. New York.

May 4, 1981.

Supplemental Opinion June 11, 1981.

---

Martin R. Stolar, Stolar, Alterman & Gulielmetti, New York City, Howard D. Pattison, Athens, Tex., for plaintiff.

Gerald Walpin, Steven S. Miller, Susan J. Schwartz, Donald L. Citak, Rosenman, Colin, Freund & Cohen, New York City, for defendants.

## MEMORANDUM DECISION

STEWART, District Judge:

Plaintiff, an owner of 275 shares of Class C Preferred Stock of defendant Management Assistance, Inc. ("MAI"), commenced this class action on August 1, 1978 seeking to enjoin defendants from voting proxies solicited by a proxy statement mailed to all stockholders of MAI on June 28, 1978. The proxy statement was issued in connection with MAI's proposed redemption of the Class C stock.

The complaint also seeks to enjoin the proposed redemption and damages for violation by defendants of the Securities and Exchange Act, §§ 14(a) and 10(b), 15 U.S.C. §§ 78n(a) and 78j(b)[1]. The gist of plaintiff's claim is that the proxy statement was deceptive and misleading in that it failed to disclose information which would establish that the redemption price was too low.

The complaint was accompanied by an order to show cause seeking a temporary restraining order and a preliminary injunction of holding the stockholders' meeting which was scheduled to be held (and was held) on August 10, 1978. On August 5, 1978, MAI mailed a Supplementary Proxy Statement to its stockholders advising them of plaintiff's lawsuit and containing additional information relating to those matters as to which plaintiff asserted misrepresentation or non-disclosure. After hearings, we denied the motion for temporary and preliminary relief (Memorandum Decision dated August 10, 1978) and the Court of Appeals on August 17, 1978 denied plaintiff's application for a stay of the stockholders' meeting. At the meeting, the stockholders overwhelmingly approved the proposed redemption.

In June 1979, plaintiff's motion to certify a class, as expanded by defendants' cross-motion to certify a broader class, was granted. The class was thereafter given appropriate notice. Discovery by defendant has included taking the deposition of plaintiff in October, 1978 and requiring the production of documents by plaintiff. On the other hand, plaintiff has engaged in no discovery.[2] In December, 1979, defendants moved for summary judgment. Oral argument on the motion was heard in November, 1980. We now grant the motion and dismiss the complaint.

The proxy statement in issue dated June 27, 1978, was sent by MAI to its stockholders on June 28, 1978. Under the certificate of incorporation, the company was obliged to redeem the Class C Preferred Stock for $10.00 per share in four annual installments of $2.50 per share payable in the years 1981–84. The stock was entitled to a contingent dividend in the maximum amount of $40.00 per share which was based upon a specified percentage of Cash Flow From Operations (as defined at p. 63 of the proxy statement) of defendant Genesis One Computer Corporation ("GOCC"), which is a wholly-owned subsidiary of MAI. Since the issuance of the Class C stock in 1974, contingent dividends in the amount of 40 cents had been paid (32 cents in 1976 and 8 cents in 1977). The proxy statement set forth management's belief that no funds would be available for dividends on the stock in 1978.

In order to provide more flexibility for future business operations, according to the proxy statement, the company proposed to redeem the preferred in the immediate future for $10.50, subject to stockholder approval at a meeting scheduled for August 10, 1978.

1. Plaintiff also asserts causes of action under state law for fraud and conversion, based on pendent jurisdiction.

2. Plaintiff noticed the deposition of defendant Kurshan in the fall of 1978. Magistrate Sinclair deferred "for a short period" the deposition pending further action on the class action motion, noting in his order (dated October 4, 1978) that defendants "have not opposed producing Mr. Kurshan with reasonable dispatch at an appropriate point". Plaintiff at no time thereafter sought to depose Kurshan. Plaintiff also filed a request for production of documents on March 31, 1980 after the motion for summary judgment, discussed herein, had been submitted. Defendants filed various objections thereto on April 29, 1980. Plaintiff has taken no action with respect to these objections.

Plaintiff filed its complaint on August 1, 1978. On August 5, defendants mailed a Supplementary Proxy Statement to the stockholders advising them of the complaint, asserting that it had no merit, but setting forth additional data which the complaint alleged was necessary to make the proxy statement not misleading. The Supplementary Proxy Statement also stated that the polls would remain open until August 18, 1977 so that stockholders would have adequate time to consider the new material and could, if they desired, change their vote.[3] The shareholders voted to approve the redemption proposal of the outstanding Class C shares, 87.96 percent of Class C stockholders voting for and 2.93 percent against redemption; of the outstanding common stock, 66.89 percent voted for and .89 percent against.

Defendants attach to the motion for summary judgment extensive affidavits and exhibits asserting factual data with respect to the matters challenged in the complaint. Defendants also rely heavily upon the lengthy deposition of plaintiff, which is replete with concessions by plaintiff that he had no factual basis to support particular charges, including the fraud allegation, in the complaint.

■ In opposition to the motion, plaintiff filed after several adjournments an incomplete draft brief. Later, after defendants had filed a reply brief, plaintiff untimely filed a completed brief (which we have considered despite its untimeliness). Finally, plaintiff thereafter filed an application asking that proceedings on the motion be held in abeyance while plaintiff conducted discovery in an effort to raise factual issues with respect to the fact matters set forth in defendants' affidavits.

No affidavits as to factual matters were offered by plaintiff in response to the motion for summary judgment nor has plaintiff provided us with any basis for concluding that discovery at this late date would be reasonably likely to produce relevant information which would raise questions of fact sufficient to require denial of the motion. The application is therefore denied.

Turning to the motion for summary judgment, plaintiff has failed to establish a genuine issue as to any material fact. No affidavit of fact was submitted in opposition to defendants' affidavits. In his deposition, plaintiff conceded on numerous occasions that various allegations of the complaint were based solely on conjecture and speculation. Indeed, plaintiff's answering brief (p. 81) states that "[e]xtensive discovery will be required to establish truth or untruth of all of plaintiff's fact allegations" and (p. 28) that only after discovery "will it be determined how close plaintiff Howell and his attorney came to the true facts".

Consequently, plaintiff may succeed in its opposition to the motion only by showing that defendants are not "entitled to judgment as a matter of law" (Rule 56, F.R.Civ. P.). Plaintiff's claim is basically that the proxy statement and the supplementary proxy statement were misleading in failing to disclose allegedly material facts.

■ Initially, it is contended that the supplementary proxy statement is illegal and void because it was sent to stockholders without the court's consent after this action had been commenced. We are aware of no impropriety in defendants' issuance of the supplemental statement, which was considered at the hearing on the motion for a preliminary injunction, and upon which we relied in part in denying the motion. The purpose of a proxy statement is, of course, to put before stockholders all facts necessary for an informed decision. Where, as here, the supplemental statement contributed to this objective and did so in a proper manner, the absence of court approval would seem immaterial. Courts have conditioned approval of proxy statements on the filing of supplements, see *Sonesta International Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 255 (2d Cir. 1973); *Corenco Corp. v. Schiavone & Sons, Inc.*, 488 F.2d 207, 214–15 (2d Cir. 1973); and have approved over claims of non-disclosure proxy statements which were supplemented

---

**3.** Proxy cards and a stamped, return envelope were enclosed for this purpose.

after the commencement of litigation, *see Lessler v. Dominion Textile, Ltd.*, 411 F.Supp. 40, 42 (S.D.N.Y.1975); *Abramson v. Nytronics Inc.*, 312 F.Supp. 519, 523–26 (S.D.N.Y.1970).

■ Plaintiff also complains that the supplemental proxy statement should be disregarded because it did not involve re-solicitation of proxies. The stockholders' meeting had been fixed at August 10, 1978 by the proxy mailed on June 28. After this action was commenced on August 1, the supplemental statement was mailed on August 5. It prominently stated that the polls would be kept open until August 18 and that stockholders could file their proxies, change proxies previously filed or re-submit new proxies until that date. As we found at the hearing on the preliminary injunction, this procedure adequately and fairly protected the stockholders.

This is not a case like those relied upon by plaintiff which involved affirmative misrepresentations or crucial omissions to disclose material facts. In *Newgard v. Electro-Nucleonics, Inc.*, [1976] Fed.Sec.L.Rep. (CCH) ¶ 95,805 (S.D.N.Y.1976), for example, the company prominently and optimistically mentioned in its Annual Report mailed to stockholders with proxy materials a joint venture in which it was involved. Information critical to the likelihood of the success of the joint venture was obtained by the company before the proxy materials were mailed but was omitted therefrom and from a subsequent supplement to the proxy materials. The inclusion of the material in a second supplement was held to be an ineffective cure of the early omissions. Here, as indicated below, there were no deliberate nor material omissions from the initial proxy. In any event, the supplement gave sufficient, reasonable notice to stockholders to permit any who wished to change their vote to do so.

■ Plaintiff argues that the proxy materials are defective for failure to disclose defendants' "true names and purposes"— that is, to "freeze-out" Class C shareholders. The argument has no merit. The materials clearly disclose that the result of the proposed redemption, if approved by the stockholders, would be to freeze-out or eliminate Class C stock. As stated in *Rodman v. Grant Foundation*, 608 F.2d 64, 71 (2d Cir. 1979), "[h]ere the proposed actions of the company and their effect on stockholdings were fully disclosed". The Court in that case at 608 F.2d 71, n.5, distinguished *SEC v. Parklane Hosiery Co.*, 558 F.2d 1083 (2d Cir. 1977) where "there was 'not so much as a hint' of [the material facts] in the proxy statement".

■ Plaintiff's central contention is that the proxy and supplemental proxy statements failed to inform the stockholders of the facts necessary to enable the stockholders to make an informed decision as to whether the price to redeem the Class C shares was fair. In particular, plaintiff contends that insufficient financial information was provided with respect to GOCC. Dividends were payable to Class C shareholders only from and to the extent GOCC had "Cash Flow From Operations". As the proxy statement indicated, the ability to pay such dividends was dependent in management's view on the future success of the Wordstream operation which had been acquired in October 1977. Substantial information with respect to this operation and other ongoing operations of GOCC was furnished in the proxy statement (pp. 4–8) as well as extensive financial statements of MAI on a consolidated basis. The supplement contained financial statements and other financial data with respect to the subsidiary, GOCC.

We conclude that defendants provided sufficient information to the shareholders to enable an informed decision. No material non-disclosure has been placed in issue. We turn now to the particular allegations in the complaint:

■ 1. The complaint alleges in paragraphs 18, 19 and 20 that the proxy statement is misleading for failure to include financial statements of GOCC. Defendants contend that no such statements of GOCC, a wholly-owned subsidiary, are required by the SEC, Schedule 14A, Item 15 (17 C.F.R.

§ 240.146–101) and Form 10, 17 C.F.R. § 249.210. To the extent that the SEC may under Form 10, Subpart D, require such statements, none were sought or required by the SEC. Moreover, financial statements with respect to GOCC would be of limited, if any, significance with respect to the possible future Cash Flow From Operations of the subsidiary, since its ability to earn money to pay Class C dividends depended primarily on the new Wordstream program which was then just getting underway. In any event, such statements were included in the supplemental proxy statement.

As to the supplement, plaintiff contends that the financial statements of GOCC should have been certified. Since these financial statements were not required by the SEC rules, there is no SEC requirement of certification.[4] Moreover, plaintiff in his deposition conceded that, other than the absence of balance sheets for the years 1975 and 1976,[5] there is nothing "in the financial information provided which is false, fraudulent or fails to include and contain material facts" (Tr. 372–73).[6]

■ 2. It is claimed in paragraphs 21–23 that there was inadequate disclosure of bias or conflict of interest on the part of the directors, and especially Kurshan, Chairman of the Board and President, and defendant Berend, Senior Vice President, because of their substantial holdings of common stock. The common stockholders stood to benefit financially from the proposed redemption. The first page of the proxy statement prominently discloses that the directors as a class owned approximately 36 times more shares of common than of Class C stock; the supplementary proxy disclosed the individual holdings of each director. The proxy statement also fully and prominently disclosed the potential benefits available to common stockholders as a result of the redemption. The disclosures in the proxy statement, even without the individual data in the supplement, were sufficient and in compliance with the SEC Rules then in effect.

■ 3. In paragraphs 24–29 of the complaint, plaintiff in substance alleges that there was a failure to include (1) substantial expenditures by GOCC in development of the G-Series and new Wordstream products; (2) data with respect to benefits the Class C stockholders would have obtained if certain notes which were scheduled to be retired on or before July, 1980 had been retired prior to 1976; and (3) pro forma cash flow statements showing what GOCC's cash flow earnings for the years 1976–1978 would have been if the alleged development expenses were included and the notes had been retired in 1976. It is contended that these omissions created a false picture as to the ability to pay Class C dividends in the future.

In fact, the defendants' undisputed affidavit shows that a substantial amount of the Wordstream development work which was conducted was not paid for by GOCC, and so had no effect on the funds from which dividends would be payable to Class C. The cost of acquiring the Wordstream system, which was incurred by MAI, is included in the proxy statement at page 55, the substantial scope of the development of the Wordstream marketing and sales operation is set forth on page 6 of the proxy statement, and expenses in connection with the start-up of the program are set forth on page 2 of the supplement. The Berend

---

4. Unaudited statements were reviewed by the Court of Appeals in *Corenco Corp. v. Schiavone & Sons, Inc.*, 488 F.2d 207, 216 n.11 (2d Cir. 1973). Defendants' counsel points out in its Memorandum in Support of their Motion for Summary Judgment, p. 49 n.22, that all subsequent amendments made to the financial statements at the request of the SEC were unaudited, but were accepted and filed.

5. The omission of such statements was not material since sufficient data on those years was provided and especially since the Wordstream program was not acquired until September, 1977.

6. Other examples in the deposition of plaintiff's admissions of baseless allegations, speculation and lack of information are at Tr. 51–57, 226–28, 247–50, 283, 291–92, 294–97, 304–306, 311–12, 337–38, 343.

affidavit states that no material amounts were spent by GOCC for developing any other new products.

With respect to the note payments, the facts were fully set forth in the proxy statement, and accordingly the hypothetical calculation which plaintiff claims should have been set forth was unnecessary. In any event, the supplement at page 3 spells out the effect the retirement of the notes will have on the funds available for Class C dividends.

As to the claim relating to the lack of hypothetical pro forma cash flow statements, we think it is frivolous. In any event such cash flow calculations could be easily made, as plaintiff testified he had done, from the data in the proxy materials which specified the amounts of development expenses and debt payments incurred in those years. Moreover, defendant Berend's affidavit states, without contradiction, that the actual results for fiscal years 1978[7] and 1979 precluded the payment of any Class C dividends (Affidavit, p. 30 n.23, as supplemented by letter from defendants' counsel dated January 8, 1980).

■ 4. In paragraphs 30–36, plaintiff complains of the absence of information with respect to GOCC's three principal lines of business and the omission of information concerning probable future profits. Specific financial data, however, was included in the proxy statement with respect to the two older lines, G-Series products and unit record equipment, and substantial and pertinent information on the new Wordstream system, its development and plans for the future. Additional financial data on the two older products was included in the supplement, which confirmed that, despite an increase in sales, gross profits on G-Series products had declined approximately one-third since 1977; also, the data shows that on unit record equipment gross profits and sales declined 50% from 1976. Plaintiff alleges in paragraph 35 that "defendants have spent at least $5,000,000 entering" the Wordstream business, that defendants "have fixed plans and commitments to spend at least an additional $10,000,000" and "that profit margins presently exceed 25%". In fact, the proxy statement contains detailed information (p. 55) on the cost of entering the Wordstream business. At his deposition, plaintiff stated he had no basis for the figure of $10,000,000 (Tr. 304). The reference to 25% was based, according to paragraph 35, on "inquiry in trade circles". Plaintiff conceded at his deposition he had not made and that he knew of no "inquiry in trade circles" (Tr. 306). Projections as to possible future profits were not made. Any such projections would have been unreliable at best, in light of defendants' very limited experience with the program. The fact that for this reason no projections would be included in the proxy materials was made known to the SEC during its review of the proxy statement and it did not suggest that any projection should be made. See *General Time Corp. v. Talley Industries, Inc.*, 403 F.2d 159, 163 (2d Cir. 1968). Plaintiff's assertions in paragraph 35 of the complaint with respect to projections, profit margins and planned future expenditures are, he cheerfully conceded at his deposition, in essence pure speculation.[8]

5. Paragraphs 37 and 38 rely upon an alleged commitment described in the complaint as an "illusory promise" in a 1974 MAI registration statement to have one of

---

7. At page 5, the proxy statement said it was "unlikely that any dividend would be payable for fiscal 1978".

8. In his brief, plaintiff points to the item of $16,800,000 which is listed in the GOCC balance sheet in the supplement as "Due from affiliated companies". Plaintiff contends that there was inadequate disclosure in this respect, speculating that these amounts were diverted "to minimize the obligation to 'C' shareholders". No factual information by affidavit or otherwise is offered in support of this speculation. There was, of course, disclosure of the amount owed to GOCC. The proxy materials, moreover, disclose that the repayment of these amounts would not be available to the Class C stockholders as dividends, because they would not be included in "Cash Flow From Operations". Nothing plaintiff has presented as to this item supports his position that he is entitled to discovery nor that there is an issue here sufficient to defeat summary judgment.

its domestic subsidiaries make a securities offering. The 1974 statement is attached to defendant Berend's affidavit. It discloses that no such commitment was made.

6. Equally without merit is the claim in paragraph 39 that the redemption proposal was a tender offer and should have complied with the Williams Act tender offer rules. 17 C.F.R. § 240.13e–1.

■ 7. Plaintiff asserts in paragraphs 40 and 41 that certain large Class C shareholders who also owned common stock should not be allowed to vote on the redemption proposal. This proposal squarely conflicts with the requirements of Section 612(a) of the New York Business Corporation Law, applicable here, and New York law. *Stokes v. Continental Trust Co.*, 186 N.Y. 285, 296, 78 N.E. 1090 (1906); *Lord v. Equitable Life Assur. Soc.*, 194 N.Y. 212, 228–29, 87 N.E. 443 (1909).

8. Finally, Counts 42–48 charge, with limited or no specificity, fraud and deceit. Count 49 charges conversion based on the acts alleged in Counts 42–48. The alleged fraudulent scheme consisted of conduct shown not to have occurred or not to have been fraudulent by the unanswered affidavits. Typically, plaintiff conceded in his deposition that he had no knowledge or information to support the allegations of misconduct in paragraph 47 and that other fraud allegations were "matters of inference and deduction" (Tr. 55–57).

Accordingly, plaintiff has failed to establish that defendants are not entitled to judgment as a matter of law.

Defendants have counterclaimed, seeking attorneys' fees as well as costs and other expenses. They contend that the action was brought in bad faith, was based on claims entirely without color, and was motivated solely by plaintiff's desire to obtain a favorable settlement for himself. Defendants point to the fact that plaintiff first communicated with defendants in a brief letter dated July 12, 1978 in which he advised that he was preparing to file a suit within one week to enjoin the August 10, 1978 stockholders' meeting. The letter goes on to state: "However, before doing so, we feel that the possibilities of settlement should be explored in order to protect the company from adverse publicity." After the action was brought, plaintiff proposed a form of settlement which would avoid notice to the class (letter of September 1, 1978).

■ Although we have concluded that this action is devoid of merit, we are not persuaded that the defendants are entitled to an award of attorneys' fees. The filing of the lawsuit brought about the supplemental proxy statement which, although perhaps unnecessary, did provide additional information. Accordingly, this application by defendants is denied.

The motion for summary judgment is granted and the complaint is dismissed with costs for the defendants.

SO ORDERED.

### SUPPLEMENTAL OPINION

Plaintiff has filed a motion asking for various forms of relief from our decision dated May 4, 1981, each of which is dealt with as follows.

■ Plaintiff seeks fees "for services in compelling defendants" to submit the supplement to the Proxy Statement. Plaintiff relies on the language in our decision to the effect that "[t]he filing of the lawsuit brought about the supplemental proxy statement which, although perhaps unnecessary, did provide additional information." We perhaps too generously considered the fact that this additional material was provided to the shareholders in deciding not to charge plaintiff with attorneys' fees in what was otherwise a compelling case for the imposition of sanctions. We in no way consider plaintiff to be a prevailing party, and plaintiff is not entitled to or deserving of fees. The application is denied.

Plaintiff also applies for attorneys' fees because defendants joined in plaintiff's motion for class certification before bringing the motion for summary judgment. It is disingenuous at best for plaintiff to seek fees from defendants for obtaining the du-

bious "benefit" of losing a class action and thereby binding the class plaintiffs to a determination in defendants' favor. Moreover, we have found the action was without merit and was based on surmise and speculation. As the Second Circuit noted in an earlier case, "plaintiff anomalously count[s] it as a benefit that he exposed the corporation to litigation expense and notoriety in an effort to erase the risk that others might do the same thing." *Schechtman v. Wolfson*, 244 F.2d 537, 540 (2d Cir. 1957). This application is also denied.

We consider the state law claims in our decision on the merits and rejected them. We decline to grant plaintiff's request that they be dismissed without prejudice.

The renewed application to give plaintiff time for discovery is denied for the reasons set forth in our decision. Plaintiff had ample time to pursue discovery and failed to do so.

The motion for a "rehearing or new trial" under Fed.R.Civ.P. 59 (which, incidentally, is not applicable) is denied.

■ Defendants have moved for an award of attorneys' fees incurred in opposing the instant motion. Plaintiff's motion is, in our view, frivolous and wholly without merit. Accordingly, defendants are awarded attorneys' fees incurred by them in opposing this motion.

SO ORDERED.