The LAW FIRM OF DANIEL P. FOSTER, P.C. and the Texas Farm Workers Union, Inc., Plaintiffs–Appellants–Cross–Appellees,

v.

TURNER BROADCASTING SYSTEM, INC. d/b/a CNN (Cable News Network, Inc.), Defendant–Appellee–Cross–Appellant.

Nos. 935, 936, Dockets 86–7967, 86–9025.

United States Court of Appeals, Second Circuit.

Argued March 18, 1987.

Decided April 13, 1988.

Daniel P. Foster, P.C., New York City, pro se.

Lawrence B. Friedman, New York City (Richard F. Ziegler, Cleary, Gottlieb, Steen & Hamilton, New York City, of counsel), for defendant-appellee-cross-appellant.

Before KEARSE, MINER and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiffs below, The Law Firm of Daniel P. Foster, P.C. (the "Firm") and The Texas Farm Workers Union, Inc. ("TFWU"), bring this appeal from a judgment entered on a memorandum and order of the United States District Court for the Southern District of New York, John F. Keenan, *Judge,* denying their motion for summary judgment and granting the motion of defendant Turner Broadcasting System ("TBS") for summary judgment dismissing the complaint. TBS cross-appeals from the denial of Rule 11 sanctions below.

Plaintiffs' complaint alleged that plaintiffs were defamed by three news broadcasts concerning a search conducted by the Federal Bureau of Investigations ("FBI") and the Bureau of Alcohol, Tobacco and Firearms (the "Bureau") at the Firm's offices at 1107 Carroll Street, Brooklyn, New York. The district court found that the reports were not defamatory, and in any event were substantially accurate. In addition, the court denied all parties' motions for sanctions under Fed.R.Civ.P. 11, and denied plaintiffs' motion for further discovery as unlikely to provide any information that would alter the court's conclusions.

We affirm.

## Background

This case stems from three news reports by Cable News Network, Inc. ("CNN"), a wholly owned subsidiary of TBS,[1] concerning searches of the offices of the Firm at 1107 Carroll Street, Brooklyn, New York conducted by agents of the FBI and the Bureau on February 17, 1984. The searches were conducted under authorization of warrants issued by Judge Henry Bramwell and Magistrate Nina Gershon of the United States District Court for the Eastern and Southern Districts of New York, respectively. The warrants were issued after FBI Special Agent Neil E. Herman provided an affidavit asserting that an ongoing investigation by the FBI indicated

1. The caption of this litigation is in error in stating that TBS does business as CNN. Apparently, only TBS has been served. In view of our disposition of this appeal, we need not address TBS' contention that it is not responsible for the torts of its separately incorporated subsidiary.

that a revolutionary group called the Provisional Party of Communists ("PPC") was headquartered at 1107 Carroll Street in Brooklyn, New York.[2] The affidavit stated that the FBI expected to find a cache of weapons, together with documents pertaining to a planned uprising against the United States government, through a search of that building and several other New York City area locations. According to the FBI inventories prepared as a result of the February 17 search, the agents seized from the Firm's office, *inter alia*, a disassembled handgun, firearm parts, a mace cannister, a hand grenade (unloaded), ammunition, various knives and razors, a machete, a sword, a blackjack, a bayonet, handcuffs, court officer and police shields or badges, weapon manuals and instructions, and records of weapon purchases.

CNN broadcast three television news reports concerning the FBI searches and seizures as part of its regular news coverage. The first of these reports was aired on February 17, 1984, the day the warrants were executed. In it, a CNN reporter, Tom Hendricks, narrated what had transpired at 1107 Carroll Street that day. He reported that no one had been arrested and no explosives were found in connection with the searches and seizures, and that "there were strong denials of any wrongdoing." He stated that the building's inhabitants "describe themselves as leftist organizers, worker rights groups and mutual benefit associations, and at least one union, the Texas Farm Workers.... gathered in New York over the weekend for a series of meetings on how to improve the plight of workers," who were "not terrorists and planned no violence." In addition, a statement by FBI Associate Director Kenneth Walton indicated that planned "violent acts" by the PPC, the group allegedly housed there, prompted the FBI's search. Finally, an unidentified attorney "hired to represent the activists" described the search as "outrageous" and "unconscionable."

The second CNN report concerning the incident occurred the next day, February 18, 1984. That report included another segment of the Walton interview taped the day before, and additional statements by the attorney, who stated that he had represented the occupants of the building "off and on since 1972," describing them as "civil rights workers." Hendricks commented that there had been no violence during the searches, although resistance had been expected, and that "[t]ruckloads of contraband were seized including an unspecified number of weapons, according to the FBI." CNN reiterated that no explosives were found and no arrests were made. Hendricks concluded this report by stating that the "activists" he had talked to at the various search locations denied being part of a dangerous plot and asserted they were not even Communist Party members, but that the FBI still maintained that the evidence it seized supported its claim that a "dangerous organization has been stopped."

The third and last news report of the incident was broadcast on February 20, 1984, and consisted primarily of interviews with several people at 1107 Carroll Street who were sharply critical of the FBI raid, said there was no association between the tenants of that building and the PPC, and described the tenants as peaceful. The broadcast began, however, with the following:

Reporter: In the Friday raid while no explosives were found and no arrests made, the FBI claimed it had foiled:

Kenneth Walton: An effort to topple the Government of the United States, if you will. The national headquarters was 1107 Carroll Street in Brooklyn.

Reporter: It is the address of a lawyer's office, where now no one admits to ever even hearing of the organization called the Provisional Party of Communists.

---

2. The headquarters of the PPC was asserted to be located at Apartment 2A at that address, but the weapons and documents were allegedly to be found in Apartment 2A, Apartment 1A, the law offices of the Firm, and the basement of the building at that address, as well as at other locations in Brooklyn and Manhattan.

Hendricks later commented that "Daniel Foster's office is the supposed headquarters." Hendricks reiterated that no arrests were made and no explosives were found, and concluded the broadcast by stating that "unless the confiscated material and earlier information which led to the raids backs its claims, it may be the FBI itself on trial."

The Firm and TFWU subsequently filed suit in the Supreme Court of the State of New York, County of New York. TBS removed the case to the United States District Court for the Southern District of New York on the basis of diversity of citizenship. The Firm and TFWU alleged that TBS' news broadcasts on this subject displayed the Firm's offices in the background while making false statements that "truckloads of contraband and weapons" and "an unspecified number of weapons" were removed from the premises, and that the materials were seized from the "Provisional Party of Communists, ... but attorney Daniel P. Foster says these are his law offices."[3] In addition, the complaint alleged that Texas broadcasts of the report referred to the Firm's offices as the "New York headquarters of the Texas Farm Workers Union."[4] Finally, the complaint asserted that these false allegations were defamatory, since they would wrongly lead viewers to believe that the Firm's offices were the headquarters of the terrorist PPC

and that weapons and contraband were seized from the premises, and that TBS had no reasonable cause to believe these allegations.

Both parties moved for summary judgment. The district court found the reports taken as a whole not to be reasonably susceptible of a defamatory connotation, since they "depicted spokespersons who criticized the law enforcement agencies' conduct as well as statements by [FBI spokesman] Walton and the overall tenor of the reports suggested that perhaps the agencies were mistaken in carrying out the searches and seizures." Further, the Court held that even if the reports were susceptible of a defamatory connotation, they were substantially accurate and thus protected by the "defense of truth."[5] Concluding that plaintiffs had "raised no evidence sufficient to meet the 'clear and convincing' standard they must satisfy in order to oppose successfully defendant's motion for summary judgment,"[6] the court granted defendant's motion for summary judgment and dismissed the complaint. The court also denied plaintiffs' motion for summary judgment and sanctions, and defendant's motion for sanctions. Finally, the court denied plaintiffs' motion for a "continuance of consideration" of defendant's motion for summary judgment pending further discovery, since "nothing that could be revealed by answers to interroga-

---

**3.** This language does not appear in the actual broadcasts. The pleading is apparently a clumsy reference to the portion of the February 20 broadcast quoted *supra* at p. 957. Defendant cites authorities for the proposition that the libel must be pleaded *in haec verba,* reasoning inventively from this premise that plaintiffs must rely upon the garbled version of the February 20 broadcast stated in their complaint. The *"in haec verba"* requirement, however, is no longer the rule in this circuit. *Kelly v. Schmidberger,* 806 F.2d 44, 46 (2d Cir.1986); *Geisler v. Petrocelli,* 616 F.2d 636, 640 (2d Cir. 1980).

**4.** These alleged "Texas broadcasts" are not reflected in the record before us. The only reference to the TFWU in the three videotapes and transcripts presented to the court occurs in the initial February 17 report, where it is stated that among those gathered at 1107 Carroll Street "for a series of meetings on how to improve the plight of the workers" was "at least one union,

the Texas Farm Workers." All participants were described by CNN as "vehement in their statement that they were not terrorists and planned no violence."

**5.** Although truth is a matter of affirmative defense under the common law of defamation, a public figure plaintiff, *Garrison v. Louisiana,* 379 U.S. 64, 74 (1964), or private figure plaintiff involved in a matter of public concern, *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 774–78, 106 S.Ct. 1558, 1559, 1563–64, 89 L.Ed. 2d 783 (1986), has the burden to establish falsity.

**6.** The court cited *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), at this juncture, but *Anderson* applies the "clear and convincing" standard only to summary judgment determinations concerning the issue of actual malice. 477 U.S. at 255–57, 106 S.Ct. at 2514.

tories" could alter the court's conclusions as to the accuracy and non-defamatory nature of the broadcast reports.

## Discussion

Summary judgment must be entered after adequate time for discovery and upon a motion under Fed.R.Civ.P. 56(c) "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). When a motion for summary judgment is adequately supported by affidavits made on personal knowledge, which may be supported by documentary exhibits, depositions, answers to interrogatories or further affidavits, it must be controverted by a similar response setting forth "specific facts showing that there is a genuine issue for trial," absent which summary judgment shall be entered, if appropriate; the opposing party "may not rest upon the mere allegations or denials of [his] pleading...." Fed.R.Civ.P. 56(e). Put another way, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Under familiar principles, New York law is to be applied in this (removed) diversity case, subject to applicable first amendment requirements. At the outset, we apply New York's "choice of law" standards, *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), resulting in the application of New York substantive law. *See Cianci v. New Times Publishing Co.,* 639 F.2d 54, 70 (2d Cir.1980); Restatement (Second) of Conflict of Laws § 150(2) and comment e (1971).[7]

The Firm is a private figure involved in a matter of public concern. *See Chapadeau v. Utica Observor–Dispatch, Inc.,* 38 N.Y.2d 196, 198–99, 379 N.Y.S.2d 61, 63–64, 341 N.E.2d 569, 570–71 (1975).[8] The CNN news reports clearly relate to a matter of public concern, both as to the FBI's contentions of terrorist activity and the other interviewees' responses to the searches and seizures.

This case is accordingly governed by *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986), which holds that "where a newspaper publishes speech of public concern, a private-figure plaintiff cannot recover damages without also showing that the statements at issue are false." *Id.,* 475 U.S. at 767, 106 S.Ct. at 1559; *see also id.,* 475 U.S. at 774–78, 106 S.Ct. at 1563–64. *Cf. Hustler Magazine v. Falwell,* —— U.S. ——, ——, 108 S.Ct. 876, 882, 99 L.Ed.2d 41 (1988) ("false statement of fact" constitutionally required for public figures and public officials to recover for intentional infliction of emotional distress). This burden of proving falsity is independent of any demonstration of fault, and is a prerequisite to recovering damages. *Philadelphia Newspapers,* 475 U.S. at 774–76, 106 S.Ct. at 1563. Furthermore, defendant is held only to a standard of substantial, not literal, accuracy. *See Liberty Lobby, Inc. v. Dow Jones & Co.,* 838 F.2d 1287, 1296 (D.C.Cir.1988); *Tavoulareas v. Piro,* 817 F.2d 762, 787 (D.C.Cir.) (in banc), *cert. denied,* —— U.S. ——, 108 S.Ct. 200, 98 L.Ed.2d 151 (1987); *Fairley v. Peekskill Star Corp.,* 83 A.D.2d 294, 297, 445 N.Y.S.2d 156, 159 (2d Dep't 1981); Restatement (Second) of Torts § 581A comment f (1977). The accuracy of the report should be assessed on the publication as a whole, not isolated portions of it. *James v. Gannett Co.,* 40 N.Y.2d 415, 419, 353 N.E.2d 834, 838, 386 N.Y.S.2d 871, 874 (1976).

We now apply these criteria to the facts of this case. Based on the record

---

7. The defamation claims of TFWU, considered *infra* at pp. 961–962, may be subject to Texas rather than New York law, but are not viable in either event.

8. TFWU is either such a private figure or a public figure. In either event, it has the burden of proving falsity. *See supra* note 5.

presented to us, we see no genuine issue of material fact as to the alleged falsity of the report that "[t]ruckloads of contraband were seized including an unspecified number of weapons, according to the FBI." Under familiar principles of defamation law, CNN cannot escape liability for a false, defamatory statement simply because it repeated the statement of a third party, here the FBI. Restatement (Second) of Torts § 581A comment e (1977).[9] Except for conclusory assertions, however, the Firm and TFWU have made no showing that this statement was not substantially accurate. In any event, the common law privilege for reports of official proceedings considered hereinafter would immunize this statement as a basis for tort liability.

The quotation of FBI spokesman Walton charging that 1107 Carroll Street in Brooklyn was the "national headquarters" of "[a]n effort to topple the Government of the United States," coupled with CNN's immediate follow-up that this was "the address of a lawyer's office," and a further statement in the same (February 20) broadcast that "Daniel Foster's office is the supposed headquarters," stands on a different footing. As stated earlier, TBS cannot escape liability for a false and defamatory statement simply because it repeated the statement of a third party. It is obviously defamatory, *i.e.*, injurious to reputation, to describe a lawyer's office as the headquarters of an effort to overthrow the nation's government. Nor can we conclude on this record that there is no genuine issue of material fact as to the falsity of this assertion.

We affirm the district court's dismissal as to this alleged libel, however, on a ground not considered below, as we are permitted to do. *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 121, 157–58, 82 L.Ed. 224 (1937). Specifically, we deem the common law privilege for reports of an official proceeding, as codified at N.Y. Civil Rights Law § 74 (McKinney 1976) and interpreted in New York cases construing that statute and its predecessors, to preclude liability here and provide a basis for

affirmance of the judgment below with respect to the "national headquarters" statement.

Section 74 provides:

A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published.

This section does not apply to a libel contained in any other matter added by any person concerned in the publication; or in the report of anything said or done at the time and place of such a proceeding which was not a part thereof.

N.Y. Civil Rights Law § 74 (McKinney 1976).

This statute has been construed as applicable to reports of an investigation by the New York City Department of Consumer Affairs into the sales practices of air conditioner repair shops, *Freeze Right Refrigeration and Air Conditioning Services, Inc. v. City of New York,* 101 A.D.2d 175, 475 N.Y.S.2d 383 (1st Dep't 1984); a district attorney's investigation, *Baumann v. Newspaper Enterprises, Inc.,* 270 A.D. 825, 60 N.Y.S.2d 185 (2d Dep't 1946); and an internal governmental investigation of the Federal Civil Works Administration, *Farrell v. New York Evening Post, Inc.,* 167 Misc. 412, 3 N.Y.S.2d 1018 (Sup.Ct. 1938). Most pertinent here, the privilege has been applied to a report of the execution of an arrest warrant and search warrant. *Kramer v. News Syndicate Co.,* 260 A.D. 17, 20 N.Y.S.2d 700 (1st Dep't), *rev'd on other grounds,* 284 N.Y. 557, 32 N.E.2d 552 (1940). *See also Josephs v. News Syndicate Co.,* 5 Misc.2d 184, 159 N.Y.S.2d 537 (Sup.Ct.1957) (report of arrest and arraignment); *Hornyak v. Hearst Corp.,* 66 N.Y. S.2d 848 (Sup.Ct.1946) (report of arrest, charge, commitment, indictment, parole and discharge), *aff'd,* 272 A.D. 866, 71 N.Y. S.2d 713 (1st Dep't 1947). It has been held inapplicable, on the other hand, to a state-

---

**9.** As we discuss hereinafter, a claim of common law or constitutional privilege is sometimes

available in such circumstances.

ment by an individual police officer concerning an investigation which he was conducting. *Kelley v. Hearst Corp.*, 2 A.D.2d 480, 483–84, 157 N.Y.S.2d 498, 502 (3d Dep't) (citing *Nunnally v. Press Publishing Co.*, 110 A.D. 10, 12–13, 96 N.Y.S. 1042, 1044 (2d Dep't 1905)), *amended*, 3 A.D.2d 610, 158 N.Y.S.2d 781 (3d Dep't 1956), *appeal denied*, 3 A.D.2d 963, 163 N.Y.S.2d 937 (3d Dep't 1957).

Here, CNN published a statement by the head of the New York office of the FBI concerning the execution of a warrant issued upon the authorization of a federal judge.[10] Based upon the foregoing authorities, we deem it likely that the New York courts would regard CNN's report of that statement as falling within the statutory privilege. It is clear, furthermore, that the report was "fair and true," as required by the statute. As to truth, it was a verbatim quotation of FBI Associate Director Walton. As to fairness, the quotation was balanced by eight interviews in the same broadcast which challenged the *bona fides* of the FBI search, and a concluding statement by the CNN reporter that "it may be the FBI itself on trial."[11] Finally, since there is no factual dispute concerning the text of the CNN broadcast or the official authorization for and nature of the FBI search, the statutory privilege provides a proper basis for affirmance of the district court's award of summary judgment with respect to the "national headquarters" report.

We therefore need not consider the possible applicability of the first amendment privilege of neutral reportage articulated by this court in *Edwards v. National Audubon Society, Inc.*, 556 F.2d 113 (2d Cir.), *cert. denied sub. nom. Edwards v. New York Times Co.*, 434 U.S. 1002, 98 S.Ct. 647, 54 L.Ed.2d 498 (1977).[12] We later construed *Edwards*, in *Cianci v. New Times Publishing Co.*, 639 F.2d 54, 67 (2d Cir. 1980), as applying this privilege to cases involving public officials or figures. It would therefore be at least arguably an extension of *Edwards* to apply it to litigation brought by a private figure involved in a matter of public concern, such as the Firm, and we should not address this constitutional question where there is an independent state ground on which the district court judgment may be sustained. *Ashwander v. TVA*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). *Cf. Virginia v. American Booksellers Ass'n, Inc.*, —— U.S. ——, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988) (certifying questions to obtain authoritative state construction of a statute before considering first amendment challenge to statute).

■ As to the claims of TFWU, the videotapes and scripts in the record do not contain any assertion that the Firm's law offices were also described, as alleged in the complaint, as the "New York headquarters of the Texas Farmworkers Union," an assertion allegedly made in "Texas broadcasts and telecasts." The only reference to the TFWU in the broadcasts included in the record is a wholly tangential statement that among those gathered at

---

**10.** The warrant issued by Magistrate Gershon was presumably for the Manhattan search. The Brooklyn search at issue here was authorized by Judge Bramwell.

**11.** The statute also provides, in its second sentence, that the privilege "does not apply to a libel contained in any other matter added by any person concerned in the publication." Here, CNN's reporter added that "Daniel Foster's office is the supposed headquarters" to the FBI's assertion that the "national headquarters" of "[a]n effort to topple the Government of the United States" was located at 1107 Carroll Street. In *Hanft v. Heller*, 64 Misc.2d 947, 949–50, 316 N.Y.S.2d 255, 258 (Sup.Ct.1970), however, it was held that the addition of the plaintiff's name to a summary of a judicial opinion (from which that name had apparently been deleted when the opinion was simultaneously published) did not deprive the summary of the protection of the statutory privilege.

**12.** We note that one New York court has repudiated the *Edwards* rule. *See Hogan v. Herald Co.*, 84 A.D.2d 470, 446 N.Y.S.2d 836, 842 (4th Dep't), *aff'd*, 58 N.Y.2d 630, 444 N.E.2d 1002, 458 N.Y.S.2d 538 (1982). Another, however, has cited it favorably. *See Orr v. Lynch*, 60 A.D.2d 949, 950, 401 N.Y.S.2d 897, 899 (3d Dep't), *aff'd*, 45 N.Y.2d 903, 383 N.E.2d 562, 411 N.Y.S.2d 10 (1978). In any event, were we to reach the issue, we would not be bound by the expressions of New York courts concerning this issue of federal constitutional law, contrary to the rule concerning questions of state law arising in diversity cases.

1107 Carroll Street "for a series of meetings on how to improve the plight of the workers" was "at least one union, the Texas Farm Workers." All participants were described by CNN as "vehement in their statement that they were not terrorists and planned no violence." No defamation is apparent.

Finally, we view Judge Keenan's denial of a continuance for the purpose of further discovery as falling well within his discretion on this record. *See, e.g., Howell v. Management Assistance, Inc.*, 519 F.Supp. 83, 87 (S.D.N.Y.1981), *aff'd mem.*, 685 F.2d 424 (2d Cir.), *cert. denied*, 459 U.S. 862, 103 S.Ct. 138, 74 L.Ed.2d 118 (1982). As to defendant's cross-appeal with respect to the denial of sanctions below and further application for sanctions on this appeal, there is no objective basis, as is required, *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253–54 (2d Cir.1985), for sanctions at either level in view of our disposition of a major question in this case on a ground not considered below, nor briefed or argued here.

## Conclusion

The judgment of the district court is affirmed.