**STATE OF NEW YORK, Plaintiff,**

v.

**ALLIED CORPORATION,**
**et al., Defendants,**

v.

**CARRIER CORPORATION, et al.,**
**Third–Party Defendants.**

**No. 83–CV–1619.**

United States District Court,
N.D. New York.

April 8, 1992.

Hancock & Estabrook, Syracuse, N.Y., for defendant Allied Corp.

Kirkpatrick, Lockhart, Johnson & Hutchinson, Pittsburgh, Pa., for defendant AVM Corp.

Porter, Wright, Morris & Arthur, Washington, D.C., for defendant Bristol Labs, Inc.

Whiteman, Osterman & Hanna, Albany, N.Y., for defendant General Elec.

Costello, Cooney & Fearon, Syracuse, for defendant GMC.

Covington & Burling, Washington, D.C., for defendant IBM.

John Leshinski, Blue Ball, Pa., for defendant Unisys (for Sperry Corp.)

Hiscock & Barclay, Syracuse, N.Y., for defendant Pass and Seymour.

Teitelbaum, Hiller, R., P. & H., P.C., New York City, for defendant Stauffer and ICI Americas.

David W. Zugschwerdt, Asst. U.S. Atty., Land & Natural Res. Div., EDS, U.S. Dept. of Justice, Washington, D.C., for U.S.

Stephen Patrick Joyce, Sherburne, N.Y., for Lindseys.

Richard M. Weinstein, New York City, for defendants Frank, Julian and James Novak.

Patton, Boggs & Blow, Washington, D.C., for third-party defendants Carrier Corp. and Norwich Eaton Pharmaceuticals, Inc.

Coulter, Fraser, Ames B., B. & V., Syracuse, N.Y., for third-party defendants R.E. Deitz Co.

Nixon, Hargrave, Devans & Doyle, Rochester, N.Y., for defendant Smith Corona Corp.

## MEMORANDUM DECISION AND ORDER

CHOLAKIS, District Judge.

In 1983 the State of New York brought this case against ten parties for the remediation of two toxic dumps located in upstate New York, pursuant to Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9607, and the New York State Environmental Conservation Law (ECL). These two sites are known as "Novak Farm" and "Lincklaen." The State also seeks reimbursement of their costs in responding to this threat, damages for harm to natural resources, and penalties under the ECL.

In the 1960's and 1970's these sites were the home of companies "Solvent Savers" and "Cash Barrel"—ostensibly chemical reclamation and recycling firms. The owner of these enterprises, Dale Hough,[1] did not keep very complete business records of his operations and his death in 1978 precludes any meaningful deposition testimony from him about his operations. Moreover, documentary evidence regarding Solvent Savers' operations is all but non-existent. As a result, a very large part of this case involves the determination of just which companies' toxic chemicals have been dumped at these sites.

Since this suit was commenced, there have been extended periods during which litigation was suspended pending studies of the sites and settlement negotiations. The original ten defendants have been busily pointing fingers at each other with numerous cross-claims, and in 1987 it was clear that there would be no easy resolution. At that time, four years after the commencement of the suit, Defendants Bristol, Stauffer, and General Electric (affectionately referred to by the other parties to this action as the "Big Three") and several other defendants were "obligated" to answer the complaint. Pursuant to discovery that had transpired up to that point, including the deposition testimony of some former employees of Solvent Savers, four additional companies were served third party complaints: Smith Corona, R.E. Deitz, Inc.,

---

1. Hough's brother-in-law, Dr. Harold Frediani—a former scientist for defendant Bristol—founded Solvent Savers in the early 1960's, and turned it over to Hough soon thereafter. Hough operated at Lincklaen from 1965 to early 1973, and at Novak Farm from March 1967 to December of 1969.

Carrier Corporation and Norwich–Eaton Pharmaceuticals Incorporated (NEPI).

Sometime in late 1987 the Federal Government, through the United States Environmental Protection Agency (USEPA), assumed primary responsibility for co-ordinating and initiating activities at these sites. In September 1989, USEPA issued an Administrative Order to several parties, compelling the removal and disposal of certain contaminated soils and drums located at these sites. Separately, USEPA conducted a Remedial Investigation/Feasibility Study (RI/FS) of the sites; and in December 1990, USEPA served a demand on six parties, for reimbursement of approximately $2 million which was expended on this RI/FS and related CERCLA costs. To date this reimbursement claim is unresolved. Additionally, in May of 1991, USEPA issued an Administrative Order to five of the parties, compelling the performance of a remedial action at the sites.

A Case Management Order was issued by this Court on November 29, 1991, and trial of this action is scheduled to begin on August 3, 1992. Presently before this Court are the following dispositive motions: Third-party defendant Smith Corona's motion for summary judgment; Defendant United States' motion for partial summary judgment; and Defendants/Third-party Plaintiffs GE, Bristol, and Stauffer Chemical/Management's cross-motion for summary judgment against the United States. Defendant General Motors' Motion for Summary Judgment; Defendant Unisys' Motion for Summary Judgment; and Defendant United States' Motion for Partial Summary Judgment dismissing the non-CERCLA Cross-claims of Unisys [2]; have all been withdrawn.

## CERCLA LIABILITY

A party is liable under CERCLA if the following four elements are proven:

(1) that the sites in question are "facilities," within the meaning of 42 U.S.C. § 9601(9)(B);

(2) that a "release" or "threatened release" has occurred at the sites, within the meaning of 42 U.S.C. § 9601(22) & (14);

(3) that such a "release" or "threatened release" caused the State to incur response costs, *see* 42 U.S.C. § 9607; and

(4) that the party is a responsible person within the four classes described in 42 U.S.C. § 9607(a)

*See United States v. Alcan Aluminum Corp.*, 755 F.Supp. 531, 535–36 (N.D.N.Y. 1991) (citations omitted).

All of the parties essentially concede that the Lincklaen and Novak Farm sites are "facilities" where a "release" or "threatened release," which has caused the State to incur response costs, has occurred. Therefore, the issue on the present summary judgment motions is centered around the various parties' liability under § 9607(a).

Under § 9607(a), liable parties for hazardous waste disposal are limited to:

(1) the owner or operator of a facility or vessel,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or threat of release which causes the incur-

**2.** *See* Stipulation and Order entered 3/16/92.

rence of response costs, of a hazardous substance, shall be liable ...

42 U.S.C. § 9607(a)(1)–(4).

The liability of the parties subject to the present motions is alleged under § 9607(a)(3) above: as "person[s] who ... contract[ed], agree[d], or otherwise arranged for disposal or treatment, or arranged with [Solvent Savers] for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances." *Id.*

## SUMMARY JUDGMENT

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

In deciding such a motion, the Court is not to resolve disputed issues of fact, but rather, to assess whether a genuine issue regarding a material fact remains for the trier of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniel P. Foster, P.C. v. Turner Broadcasting System, Inc.*, 844 F.2d 955, 959 (2d Cir.1988), *cert. denied* 488 U.S. 994, 109 S.Ct. 559, 102 L.Ed.2d 585 (1988) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). The record is assessed in a light most favorable to the non-movant, and all reasonable inferences are drawn in

the non-movant's favor. *See Ramsuer v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989). A non-movant who bears the ultimate burden of proof, however, must demonstrate that there is *some* evidence which would create a genuine issue of material fact. *See Twin Laboratories, Inc. v. Weider Health and Fitness*, 900 F.2d 566, 568 (2d Cir.1990). This evidence cannot be "conclusory allegations," *id.*, or "mere speculation," *Howard v. Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir.1990), but rather something more than a "scintilla of evidence", *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986), and more than "some metaphysical doubt as to the material facts". *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "Furthermore, summary judgment cannot be avoided by immaterial factual disputes". *Howard v. Gleason Corp.*, 901 F.2d at 1159.

## SMITH CORONA'S MOTION

■ Smith Corona moves for the summary judgment dismissal of all claims against it, on the grounds that there is no triable issue of fact as to Smith Corona's liability—claiming that they did not arrange for the disposal or treatment of any hazardous substance by Solvent Savers.[3] However, Smith Corona has actually demonstrated the *presence* of a material factual issue in dispute, *not* the absence of a material factual issue in dispute. Within their own papers Smith–Corona recognizes that two former employees of Solvent Savers have testified to picking up waste solvents from Smith Corona,[4] thereby acknowledging the existence of the very dispute which undermines their ability to meet their summary judgment burden. Smith Corona attacks this testimony—however,

---

**3.** Smith Corona does admit to having *purchased* four shipments of reclaimed solvents from Solvent Savers in 1973, and this fact is borne out by documentary evidence. However, no documentary evidence exists to show that Solvent Savers picked up waste solvents from Smith Corona.

**4.** *See* Harold Hough (Dale Hough's son) Deposition, pp. 65–66; and Dennis J. Beach 1991 Deposition, pp. 9–12.

these attacks do not deny the existence of the dispute.

These attacks are essentially attacks on the credibility of the former Solvent Savers employees' testimony. However, even if the Court were to accept all of Smith Corona's contentions,[5] they merely cast doubt on such testimony, they do not eliminate the dispute that exists between such testimony and Smith Corona's contention that Solvent Savers never removed hazardous materials from their plant. This is not "a mere possibility that a factual dispute may exist,"[6] or a "frivolous or immaterial" issue,[7] this is an *actual* and *genuine* dispute regarding a material factual issue.

Additionally, a former employee of Smith Corona has testified that Solvent Savers picked up full drums of waste material from Smith Corona.[8] Smith Corona attacks this testimony as coming from a disgruntled former employee who, in a previous questionnaire circulated by Smith Corona in 1987, denied any knowledge of Solvent Savers.[9] However, such attacks merely go to the weight of the evidence—a determination not to be made by the Court on a motion for summary judgment. *See Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513.

This Court is only to determine if a material factual issue in dispute exists, *not* to resolve such a dispute. Here, "the moving part[y] [has] not foreclosed the possibility of the existence of certain facts from which 'it would be open to a jury ... to infer from the circumstances' " that Solvent Savers had received waste solvents from GM. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510 (quoting *Adickes v. S.H. Kresse & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598,

1608–09, 26 L.Ed.2d 142 (1970)). Therefore, because such a dispute as to a material factual issue exists, Smith Corona's motion for summary judgment is denied.

## THE UNITED STATES' MOTION

■ The United States moves for a partial summary judgment declaring the Big Three liable parties in this action pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607. As above, there is no dispute over whether these sites are "facilities;" whether a hazardous substance has been, or threatens to be, released; or whether response costs have been incurred. Additionally, while the Big Three complain that the United States has not specified at which of the two sites each of them arranged to have their hazardous waste treated or disposed,[10] they do not contest the contention of the United States that they each generated waste which was received by Solvent Savers. As such, all of the requirements for liability under § 107(a) have been met.

■ The basis of the Big Three's objection to this motion is that the United States has failed to state if it is bringing this motion based on a claim of contribution under Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), or a claim for cost recovery under § 107(a). If it is for contribution under § 113(f)(1), the Big Three claim that the motion is not yet ripe: they contend that until the United States has been found liable it is not entitled to contribution. This may be so. *See Alloy Briquetting Corp. v. Niagara Vest, Inc.,* 756 F.Supp. 713, 718–19 (W.D.N.Y.1991) (explaining *United States v. Seymour Recycling,* 686 F.Supp. 696, 700 (S.D.Ind.1988)).

---

5. Such an acceptance would be contrary to the Supreme Court's decision in *Anderson:* "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ... The evidence of a non-moving party is to be believed, and all justifiable inferences to be drawn in its favor." *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513.

6. GM's Memorandum in Support, p. 11 (quoting *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980)).

7. *See United States v. Matheson,* 532 F.2d 809, 813 (2d Cir.1976).

8. *See* Willard Hutchings Deposition, pp. 46–56.

9. *See* Smith Corona's Exhibit Q.

10. However, in the Big Three's papers they concede that a close reading of the United States' 10(j) Statement reveals that the United States is claiming that GE and Bristol are liable parties at the Lincklaen site, and Stauffer is a liable party at the Novak Farm site.

However, the Court reads the United States' motion to be made under § 107(a), and as such there is no need to find that the United States is entitled to contribution from these parties under § 113(f)(1).[11] Further, because there are no material factual issues in dispute regarding the § 107(a) claim, a declaration that GE and Bristol are liable parties—*to the United States*[12]—at the Lincklaen site, and that Stauffer is a liable party—*to the United States*—at the Novak Farm site, is granted.

## THE BIG THREE'S CROSS–MOTION

■ In the event that they are found liable under the above motion, the Big Three move for partial summary judgment declaring the United States to be liable to them in contribution pursuant to § 113(f)(1). Movants have met their initial burden in showing that the United States is a liable party under § 107(a). However, the United States contends that there is a dispute regarding a genuine issue of material fact: i.e., whether the United States arranged for the disposal or treatment of hazardous substances at, or for the transportation of hazardous substances to, either of the two facilities involved. In essence the United States contends that there is a dispute over whether the solvents received by Solvent Savers from the United States Air Force (USAF) actually ended up at either Lincklaen or Novak Farm. The United States claims that the Big Three, as movants, bear the burden to show that a dispute does not exist over this issue.

Initially it should be noted that the United States had previously stated that hazardous waste generated at Griffis Air Force Base was sent to Solvent Savers site at Lincklaen.[13] The Big Three have also shown that at least two former employees of Solvent Savers have testified that USAF trucks delivered waste directly to the Lincklaen site.[14] As such, the Big Three have met their summary judgment burden by demonstrating the lack of a dispute regarding this issue.

In response the United States claims that this evidence is in direct conflict with the deposition testimony of James A. Smith that Solvent Savers removed solvents in its own vehicles.[15] It may be true that Solvent Savers removed solvents from Griffis in its own vehicles—but that does not thereby contradict the testimony that the USAF delivered waste to Lincklaen in its own vehicles. In other words, there has been no showing that a genuine dispute over a material fact exists: both methods of waste removal could have occurred—they are not mutually exclusive. The United States also cites the testimony of Bruce H. Mero that USAF vehicles are not used, and to his knowledge have not been used, to transport wastes off-site from Griffis—however his period of personal knowledge does not span the years relevant to the present action (i.e. the mid to late 1960's and early 1970's).

Therefore, the United States has not shown the existence of a genuine dispute regarding the arrangement by the United States for the disposal or treatment of hazardous substances at, or for the transportation of hazardous substances to, the Lincklaen site. As a result, summary judgment, *as to that site*, is granted.[16]

## CONCLUSION

For the reasons stated above, Smith Corona's motion for summary judgment is

11. In any event, the Court's determination—in response to the Big Three's cross-motion, *infra*—that the United States is a liable party, moots such an argument by the Big Three.

12. In their "response" papers to this motion, IBM, Pass & Seymour and GM also seek to join in this motion of the United States. However the case management order required that all dispositive motions be filed by 2/14/92—therefore the recent attempt by these parties to join in such a motion is untimely.

13. *See* Response of United States to Requests for Admissions, Big Three's Exhibit E, p. 2.

14. *See* Depositions of William Sweet at pp. 30–34; and Harold Hough at pp. 47–50.

15. *See* Smith Deposition, p. 20.

16. A dispute still exists as to whether or not "still bottoms" from the Lincklaen site were removed to the Novak Farm site. *Compare* Deposition testimonies of Thomas Galloway and Harold Hough.

denied; the United States' motion for partial summary judgment declaring GE and Bristol liable parties to the United States for the Lincklaen site, and Stauffer a liable party to the United States for the Novak Farm site, is granted; and the cross-motion of the Big Three for partial summary judgment declaring the United States to be liable to them in contribution for the Lincklaen site, pursuant to § 113(f)(1), is granted.

IT IS SO ORDERED.